The opinion of the Court was delivered by
Gibson J.
Edward Almond, under whom both parties claim, conveyed the premises to the defendant by a deed, dated the 28th June, 1803, in consideration of 10 dollars, and payment by the grantee of all ground rents, to which the premises were subject, then due, or that should become so thereafter. At the same time, the parties executed an indenture, which recites the deed, and further, that it was the intent and meaning, “ and the deed of conveyance .to the said Hugh Hamilton was on this condition and mutual agreement between the parties,” that Hugh Hamilton should indemnify Edward Almond for all costs and charges by reason of the non payment of the quit rent due, or to become due; and would also build a dwelling house on the back part of the lot, and suffer Edward Almond and his wife to reside there during their lives ; and until it should be built, they were to reside in the old tenement then on the lot. After this recital follow covenants for mutual performance of the agreement. Hugh Hamilton paid the quit rents, but did not *381 build the dwelling house. Edward Almond and his wife resided, during their lives, in the old tenement, without any request to hasten the performance of Hugh Hamilton’s part of the agreement; and some time before his death, Edward Almond, thinking the estate had re-vested in him by reason of the non-performance of the condition, executed a conveyance to the plaintiff, who, after Edward Almond’s death, brought this ejectment. It is clear the indenture is to be taken in connection with the deed; for being parts of the same transaction, and executed at the same time, they form but one conveyance. In Cromwel's case, 2 Rep. 75, it was resolved, that a deed, a fine, and recovery, though made, suffered, and levied at several times, make but one assurance, because they all tend to perfect the original bargain according to the true intent and meaning of the parties. Although there is, as to the timé of creating a condition, a difference between contracts executed, and contracts executory, so that, in a feoffment of lands, the conditions must be created at the time of the grant; yet it need not be contained in the same charter with it, but is sufficient if it is in another deed, sealed at the same time. Co. Lit. 236. a. A condition must be reserved by words used by the grantor, and I admit, the covenants on the part of Hugh Hamilton can have no operation for that purpose; but the indenture being-sealed by both parties, and therefore the deed of both, the question is as to the effect of the recital contained in the premises, which unquestionably is not peculiarly the language of either, and which contains words perfectly appropriate to create a condition. The word proviso, which is the language of both,and which is more equivocal, and less operative, than the words sub conditioner has been held to create both a covenant, and a condition. If then, the intention is clear, and expressed by proper words, why should the grantor be, for remedy, restrained to the covenant? The strongest reason is, that a recital contains no direct affirmation^ — all being expressed under a whereas — and hence it is argued, that however we may suppose the parties intended an estate on condition, still, from the operative words of the deed, it is evident no such intention was executed. It is indeed laid down in Vaughan, 74, that a recital in a true deed, that other deeds were sealed and delivered, does not make such deeds true deeds, and that a false recital does not conclude the *382 parties,.or those that claim under them. But the reason there was, because the recital was of a fact that was past, and not a present part of the agreement: and besides the questi°n was, whether in a special verdict the finding of a deed in hcec verba which recited the making of another deed, was a sufficient finding of the deed recited; and it is very plain it was not; because a recital is but evidence of the fact, and not conclusive ; and a finding of the evidence only, and not the fact itself, is always insufficient. That, however, was a very different case ; for I do not here consider the clause in question as a mere recital of a past circumstance stated only to introduce the motive for the covenants that follow, but as a declaration of the present intention and agreement of the parties. The recital being in the past tense is immaterial, for the fact recited was part of the same transaction. Charters are commonly made in the perfect tense, (dedi et cotices^ si,) yet they shall be taken in the present tense, says Per~ ■kins, (sect. 741,) who gives a number of examples to shew, that in the construction of clauses containing conditions, the tenses of the verbs are often changed to get at the real intention of the parties. In 1 Leon. 112. case 164, it is said, a recital is of itself nothing, but being joined to, and considered with the rest of the deed, it is material, and amounts to an agreement: and therefore, where a man by deed recites, that he is possessed of a certain interest in land, and assigns it over, being bound in a bond to perform all the agreements in the deed, if he is not possessed of such interest the bond is forfeited. So a recital in marriage articles, that “ whereas the defendant was to pay to the plaintiff 1000/. for the marriage portion of the wife,” was held to be a ground to support an action of covenant, Graves v. White, 2 Freeman, 57: and on the same principle, an exception in a deed indented, is held to be an agreement. Cro. Eliz. 657. The i*ecital then being a declaration of the present intention, and part of the original contract of the parties, amounts to a reservation of a condition on the part of the grantor, to the advantage of which, in addition to the security, afforded by the covenants, he is fully entitled. In truth, it is unreasonable to suppose he would have parted with the title, relying only on a covenant, whether personal or running with the land.
But it is argued., that if there were a condition, the feoffee *383 had his whole life time to perform it, unless he were hastened by request: and on the other hand it is said, it was broken, by not being performed within a reasonable time, or at all events at the death of Edward. Almond the grantor. The last position rests on the authority.of Lord Clifford's case, 18 Ass. 18, which was much shaken, if not entirely overruled by the decision in Cromwel 's case, 2 Rep. 78, for Lord Coke there tells us, that a difference was taken by some of the Judges, between the death of the feoffee, and that of the feoffor, before any estate made according to the condition: for in case of the former, the condition is broken, and in that of the latter, it is not. He was of opinion also, that in Clifford's case, the Court went on other grounds than.the death of the feoffor, and that the judgment does not warrant the doctrine usually deduced from it. In the case before us, the point is at all events immaterial, because unless the condition were broken before the conveyance to the plaintiff, he cannot recover; for although chancery might perhaps compel Edward Almond, or his heirs, to execute a new conveyance if the estate were acquired after the execution of the first deed, yet it would not compel him to take advantage of the forfeiture, in order to re-acquire the estate for the benefit of the grantee. There can be a recovery, only in case the condition were to be performed presently, and to re-vest the estate, an entry by Edward Almond, as being already iii possession were unnecessary. As to the first, there are a variety of distinctions between feoffments and obligations, and also between the various kinds of acts that may constitute the condition of either; and of these it is unnenecessary to speak further than to say, it is an undoubted general rule, that where the condition is to be performed to the feoffor himself, and there is no limitation as to time but only as to person, the feoffee has his whole life time to perform it. The reason is, that conditions, not being favoured by the law, are taken strictly; and therefore a literal compliance with their terms is all that is required. But to this there are exceptions; in which, from the reason and nature of the thing, the condition shall be performed according, not merely to the letter of the agreement, but to its spirit, and the true intent and meaning of the parties. Thus in the case of Andrews v. Blunt, reported in 3 Dyer, (but with the omission of this point,) it was held, says Lord Coke, *384 who was present when the Court gave judgment, that if a man grant an advowson on condition that the grantee shall re-grant the same to the grantor in tail, and the church becomes vacant before the re-grant, although there has been no request by the grantor, the condition is broken, because the grantor cannot have all the benefit intended him by the re-grant, which was to have all the presentations during his life. 5 Fin. Condition. E. b. pi, 2. So if one enfeoff another, on condition that the feoffee shall grant the feoffor a rent or annuity during his life, payable yearly at Michaelmas and the Annunciation; in this case, the feoffee has not his lifetime, but must perform the condition before the first of those feasts, for otherwise, the feoffor would not have all the advantage of the rent intended him by the condition. Lord Cromweps case, 2 Rep. 78. And the same principle was resolved in Andrews’s case for this reason, that if it were not so, the feoffor would not have it during his life. Co. Lit. 208. b. From a view of all the cases, the rule seems to be, that where a prompt performance of the condition is necessary to give the feoffor the whole benefit contemplated to be secured to him; or where its immediate fruition formed his motive for entering into the agreement, the feoffee shall not have his life-time for performance, but only a reasonable time. Now it cannot be doubted, that the immediate enjoyment of the dwelling house described in the indenture, was the principal object Edward Almond had in view. A secure retreat, sufficiently large to accommodate him and his wife, in which they might spend their remaining days in peace and comfort, undisturbed by the cares of the world, seems to have been the extent of his aim, and the operative cause of his entering into the arrangement. In proportion therefore to the delay in erecting it, would his enjoyment of the benefit be abridged. In fact, nothing but prompt performance stands even with the letter of the contract, which speaks at the time of its date, and requires the feoffee to permit the feoffor and his wife to reside in the new building during their lives j and this could not be fulfilled by erecting it so as to enable them to spend but a part of their lives in it. The true construction then is, that the condition was to be performed in convenient time. That being the case, there was not, by the acquiescence of Edward Almond, any waver of performance, as contended; nor could *385 there be ; for otherwise there would be no forfeiture in any case, without a precedent request, and that would be equivalent to giving the feoffee his life-time in every instance where he was not hastened by request,'and would entirely destroy the value of the distinction I have endeavoured to establish.
It is said however, that if there were a forfeitnre, the estate did not re-vest, as there was no entry by any one. Now I take it to be clear, that neither entry nor claim by Edward Almond himself was necessary, for he was already lawfully in possession. If, says Littleton, land be granted to a man for five years, on condition, that if within two years he pay forty marks, then he shall have the fee, otherwise but the rterm of five years, and livery of -seisin is made to him, here he has a fee simple conditional: but if the condition be not performed within the time, the freehold shall be adjudged to be in the grantor, ’ because, he cannot enter at the end of the two years, for the grantee is at all events in by title, for the five years. 1 Inst.-216. b. So if a man grant a rent charge in fee out of his land, the rent shall be extinct, on a breach, of the condition, without any entry or claim; for he is in possession, and need make no claim on his own land: and for the same reason if a feoffee in fee, on condition, let the land for five years to the feoffor, and during the term there is a breach of the condition, the estate re-vests in the feoffor without entry or claim. 1 Inst. 218. b. But, it is said, that after the death of Edward Almond, the plaintiff, his grantee, who never was in possession, might have entered. That could not be ; for none but the feoffor, or his heir can enter ; and the reason why a right of entry cannot be assigned, is, that a contrary doctrine would favour maintenance and promote litigation. 1 Inst. 214. As then neither the feoffor nor his assignee could enter, he would have been without remedy, if the estate had not re-vested in him by operation of law, without any act done on his part.
But the Court charged the jury, that although, in lieu of an entry or claim on the land itself, notice to the feoffee of the non-performance of the condition was necessary, yet that evidence given in the cause, that the latter declared to the witness he had nothing to do with the house, and forbade him to make any repairs on his account, was proper to go to the jury, to prove notice had in fact been given : and this is *386 excepted to. I however can see no necessity for notice at all, and therefore the error, if there was one, was not prejudicial to the party by whom it is assigned. Notice is never superadded to an entry, but is said by the counsel to be necessary only in lieu of one when it cannot be made. Then the object of the entry itself, must he to give notice to the feoffee. It is not so, however, but to restore to the feoffor the actual seisin which passed from him at the time of the feoffment. Entry is an act in pais, which in point of notoriety is equal, and analogous to, the ancient feodal investiture, which always took place in the presence of the other vassals, the feodal peers of the grantee: its object therefore, in case of a condition broken, is to give notice of the resumption of seisin, not to the grantee, but the pares or freeholders of the county. 2 Bl. Com. 209. 3 Bl. Com. 174, 175. To what end should the feoffee have notice ? It may be said he should have it in this instance, to prevent him from continuing to pay the quit-rents after Edward Almond had determined to take advantage of the forfeiture, which to permit him to do, would be a fraud. I will not say there may not be such a fraud on the part of the feoffor as will entitle the feoffee to equitable relief, but mere want of notice will not constitute it. The feoffee is a tortfeasor who knows he has incurred a forfeiture, and therefore has reason to expect the infliction of the penalty : that ought to put him on inquiry, and if he afterwards fruitlessly expend his labour or money, he will have himself to blame. The same reason would, for the purpose of preventing improvements being made after a forfeiture, require an. entry, where the feoffor is hot already in possession,'to be made presently after failure to perform the condition: nothing, however, short of the statute of limitations will bar it — even a descent cast will not. But were the' rule as laid down by the Court below, still the evidence appears competent to prove notice as far as it went. .'From ‘'Hugh ÍJarfiilton’s declaration, that he had nothing to do with the property, a jury might perhaps infer, he knew that Edward Almond had rescinded the contract, and this could only be done by notice, if notice were necessary. We are of opinion, that the judgment should be affirmed.
Judgment affirmed.