## FEATHER *against* STROHOECKER.

Every partition, as well as every exchange, implies not only a warranty at the election of the party, but a condition entire, the breach of which gives an entry into the whole; with this difference, however, that a voucher to warranty of the part evicted, affirms the partition, by the acceptance of a compensation, while an entry for the condition broken defeats it. If, then, the whole or any less estate of freehold be evicted, in all or any part of a particular purparty, the partition may be avoided in the whole, whether it be of a manor that was entire, or of parcels that were several.

G.'s heirs and S. being tenants in common of a tract of land a partition was made between them. One of the heirs of G. who had been married to one of the sons of S. was in possession of the land after the death of her husband, who came into possession as the tenant of his father; an ejectment having been brought by the one who claimed under S. to avoid the partition, on the ground that they had been evicted by a stranger, from part of the land allotted to S. *Held:* That she was not precluded from making defence because of her character of tenant.

ERROR to the Common Pleas of *Northumberland* county.

This was an action of ejectment by *William Feather* and *Peter Strohoecker* against *Leah Strohoecker*. The facts which gave rise to the question of law determined, were these:--- *Thomas Grant* died, seized of a tract of land containing two hundred and seventy-five acres; his executors by authority of a power contained in his will, sold and conveyed the land on the 14th June, 1816, to *John Garber* and *John Strohoecker;* after which *John Garber* died intestate, and one of his sons petitioned the Orphans' Court for a writ of partition and valuation of the undivided moiety of the land, without requiring it to be first separated from the interest of *John Strohoecker*. The inquest first made partition between *Strohoecker* and *Garber's* heirs, by assigning a certain portion to *Strohoecker* and then executed the writ on the residue, as the several estate of the intes-

(Feather *v.* Strohoecker.)

tate. After the partition was thus made, *Garber's* heirs sold parts of the land allotted to them, to different individuals. *Leah Strohoecker*, the defendant, was one of the heirs of *Garber*, and she and her husband, then living, came into the possession of the land, for which this ejectment was brought, during the life time of her father and under him. After the partition, an ejectment was brought by *Rebecca Stedman* for part of the land, and she recovered a verdict and judgment for ninety-five acres of it, and was put into possession. After this recovery, actions of covenant against *Grant's* executors were brought both by *Strohoecker* and by the administrator of *Garber*, which were pending. The questions which arose out of these facts were, 1. If the partition were not absolutely void *ab initio*, but confirmed by the consent of the parties in interest, was it not avoided by the eviction of one of them from part of the land? 2. Was the relation of tenant which *Leah Strohoecker* had to the plaintiffs such as to preclude her from her defence upon the merits?

The defendant's counsel requested the court to instruct the jury,

1. That *John Garber's* heirs have an equal right with *John Strohoecker* to the land, in the deed of *June* 14th, 1816, not recovered by *Rebecca Stedman.*

2. That the plaintiffs cannot support this ejectment, unless the jury are well satisfied, that the hundred acres in the possession of *John Strohoecker* and his alienees, are not equal to the eighty-five acres in possession of *Garber's* heirs and their alienees; and then only for one half the difference.

3. The defendant, being one of the heirs of *Garber*, is not a trespasser in any view of the case, for the heirs of *Garber* have a lien upon this land for one half the value of the land recovered by *Rebecca Stedman*, and cannot be disturbed until that lien is extinguished, or the money tendered.

To which the court replied:

1st. They have such right, in case they do not recover their loss from *Grant's* executors. If they recover from *Grant's* executors, they have no right to contribution from the land allotted to *John Strohoecker*, as the share of the land on partition or from the assignees.

2. The plaintiffs can support their ejectment, whether the hundred acres in possession of *Hoos* and *Honsal* is equal in value, or not to the eighty-five acres in possession of *Garber's* heirs and their assignees.

3. If the defendant came in as tenant of *Strohoecker*, she must restore the possession to her landlord. *Garber's* heirs would have a lien on all the estate of *John Strohecker* for their distributive shares, if they do not recover full compensation from *Grant's* executors, but that does not prevent the plaintiff's recovery, before that contingent lien is decided.

(Feather *v.* Strohoecker.)

Exception was taken by the defendant to the opinion of the court which was argued by

*Greenough* for plaintiff in error.

*Lushells,* for defendant in error.

The opinion of the court was delivered by

GIBSON, C. J.—This action is brought to dispossess the defendant of land, which she claims to hold in common with the plaintiffs. A larger tract, of which the land in dispute is part, was held by *John Garber,* her father, in common with *John Strohoecker* the plaintiffs' grantor. *Garber* died intestate, and in pursuance of a petition by one of his sons, the Orphans' Court awarded a writ of partition and valuation of his estate, without requiring it, as ought to have been done, first to be separated from the estate of *Strohoecker* by act of the parties or an action at the common law. The inquest made partition between *Strohoecker* and the heirs of *Garber,* in the first place, by assigning the lower part of the tract to the former, and then executed the writ on the residue, as the several estate of the intestate.

That the Orphans' Court should have sanctioned the act of the Sheriff and inquest in making a preliminary partition, as the foundation of what was to follow, is not a little surprising. It is not easy to imagine, how any one but the heir or representative of an intestate, could be made a party to a partition in the Orphans' Court. In the case of a tenancy in common by purchase, the judgment that partition be made, the application within a year to open it or make a new partition, the mode of producing equality of partition, or of vesting the title, the appointment of guardians *ad litem,* in short all the parts of the process, are peculiar to the courts of common law, and confided exclusively to the Supreme Court and the Common Pleas; from the benefit of which, to say nothing of the constitutional right of a trial by jury, the party ought not to be deprived by any thing less than an express statute. On the other hand, the proceeding in the Orphans' Court without provision for personal service or publication of notice to the surviving tenant, or for determining whether he held in common with the intestate, or for charging a sum on either purparty for owelty of partition, or in case the land cannot be divided, for deciding between the surviving tenant and the representatives of the dead one, which side shall take the whole, and many other matters, which, though perfectly manageable in the courts of common law, involve interests and estates too multiform and complicated to be embraced by the proceeding in the Orphans' Court, which is adapted exclusively to the case of a tenancy in common by descent. The partition between *Strohoecker* and the heirs of *Garber,* therefore, seems to have been originally void for want of jurisdiction; but taking for granted that the parties confirmed it, or rather made a valid partition in accordance

(Feather v. Strohoecker.)

with it, by taking possession and exercising acts of exclusive own-
ership, on the the principle of *Ebert* v. *Wood*, 1 *Binney*, 216, a
question arises whether it was not avoided by the subsequent evic-
tion of a part of one of the purpartys.

This question is of easy solution. Every partition, as well as
every exchange, implies not only a warranty at the election of the
party, but a condition entire, the breach of which gives. an entry
into the whole; with this difference, however, that a voucher to
warranty of the part evicted, affirms the partition by the acceptance
of a compensation, while, an entry for the condition broken defeats
it. If, then, the whole or any less estate of freehold be evicted, in
all or any part of a particular purparty, the partition may be avoid-
ed in the whole whether it be of a manor that was entire, or of par-
cels that were several.    As if A. being seised in fee of one acre in
possession, and of another expectant on an estate for life, disseise
the tenant for life and die; a partition of these two acres between his
two daughters, will be avoided by the entry of the disseise.    *Vi-
ner*, *Partition*, 2 *pl.* 5, 6; and the same law is laid down 1 *Inst.*
174.    So it is said that one parcener cannot enter into her part again
without the consent of the other, yet if a stranger enter into her
purparty by an older title, she may enter with the other and com-
pel her to make a new partition.    *Bro. Par. pl.* 34.    Again, af-
ter eviction of an estate of freehold from a parcener who has a bad
title as to the. whole or a part, she may enter and avoid the partition
as to the whole or a part.    *Co. Lit.* 208: and the same law was held
in *Bustard's* case, 4 *Rep.* 121, *b*, on the authority of 15 *E.* 4, 3,
and 42 *Ass.* 22; and the principle of the *Earl of Pembroke's* case
was affirmed while the opinion of *Cavendish*, that partition shall
remain, though an estate for life or in-tail were evicted, was denied.
Such, then, being the rule, and the party entitled to enter being
already in possession, an entry to give her the benefit of the con-
dition, was unnecessary; as was held in *Hamilton* v. *Elliott*, 5
*Serg. & Rawle*, 375, where the doctrine on the subject was partic-
ularly examined. By the eviction of part of the purparty allotted to
*Garber's* heirs, therefore, the parties were remitted to their origi-
nal rights; and these were not varied by their action on the covenant
of *Grant*, from whom the original tenants derived the estate; inas-
much as recourse to that, was entirely consistent with the original
tenancy.

In respect to another point in the cause, the court charged, that
if the defendant's husband came into possession under his father,
(one of the original tenants in common,) she would be bound to de-
liver the possession to the plaintiffs, who are grantees of the father's
reversion.    But she also, was a child of one of the original co-ten-
ants, and in the absence of other proof, there is a presumption that
she and her husband came in under both.    On the death of her fath-

er, then, to what did she succeed? Not only to a portion of his estate, but to his character of landlord, in which, as she could not surrender the possession to herself, she was entitled to retain it as an accessory of her newly acquired ownership, at least so far as was consistent with the nature of her estate, and the concomitant rights of her co-tenants. The parties, then, stand in point of right as if no partition had been made or under-tenancy created, each being entitled to possession in common with the rest according to the quantum of his estate.

Judgment reversed and a *venire de novo* awarded.