Watts.
7 w 144
138 588
7 w 144
148 240
7 w 144.
170 603
7 W 144
28 SC 503
7 W 144
219 284

## Bear *against* Whisler.

The conveyance of a tract of land "subject, nevertheless, to the conditions and obligations contained in a certain article of agreement existing between the parties," creates an estate upon condition ; and they who are interested in the condition may enforce its performance by action of ejectment, and against a purchaser at sheriff's sale.

WRIT OF ERROR to the common pleas of *Cumberland* county.

This was an action of ejectment by Christian Whisler and Catherine his wife, and others who are the heirs at law of Philip Hartman deceased, against Samuel Bear, to recover a tract of land.

The parties, plaintiffs and defendant, claim under the same original title, which was vested in Margaret Dickey and Robert Anderson, who, in the year 1806, sold and conveyed the same in fee to Philip Hartman, who, with Martin Harman as his surety, gave to the said Margaret Dickey and Robert Anderson six bonds for the payment of 80 dollars each on the 1st of April 1816, 1817, 1818, 1819, 1820 and 1821. On the 13th of March 1815, Philip Hartman of the one part, and Jacob Angney of the other part, entered into an article of agreement, by which Hartman sold the said land to Angney upon the terms and conditions mentioned in the said agreement. At the same time this agreement was entered into, Jacob Angney, with Isaac Angney as his surety, entered into a bond to Martin Harman in the penalty of 1000 dollars, conditioned to indemnify him against the payment of the six bonds before mentioned. On the 20th of March 1815, Philip Hartman and wife executed a deed of conveyance for the land in dispute, and delivered the same to Jacob Angney. Jacob Angney did not pay the six bonds of Hartman and Harman to Margaret Dickey and Robert Anderson, as he covenanted to do; but Harman paid the same, and then sued the bond of indemnity of Jacob Angney, and Isaac Angney his surety before referred to ; and, in 1819, obtained a judgment thereon, upon which executions were issued and levied upon the land now in dispute as the property of Jacob Angney, and upon a *venditioni exponas* to April term 1823 the said tract of land was sold to Isaac Angney, Sen. for the sum of 25 dollars, who received the sheriff's deed therefor. The defendant, Samuel Bear, purchased from Isaac Angney, Sen., and holds under his title. No part of the money payable by Jacob Angney to the heirs of Philip Hartman, as mentioned in the agreement between the said Hartman and Jacob Angney before referred to, was ever paid. The plaintiffs are the heirs of Philip Hartman, and have brought this action of ejectment to enforce the payment of

[Bear v. Whisler.]

the said money.   Upon these facts, the question is, whether the plaintiffs are entitled to recover in this action?   If they be, the court will render a judgment for the plaintiffs, to be released upon the payment of the amount due on the 15th day of November 1838 which shall be ascertained by the prothonotary.   But if the court should be of opinion that the plaintiffs are not entitled to recover in this action, then judgment to be rendered for the defendant.   Philip Hartman died in 1818, and was furnished during his lifetime with the provisions, &c. mentioned in the agreement.

Article of agreement, made and concluded the 13th day of March, A. D. 1815, between Philip Hartman, of East Pennsborough township, in the county of Cumberland, and state of Pennsylvania, yeoman, of the one part, and Jacob Angney, of the same place, of the other part, witnesseth, that the said Philip Hartman doth hereby bargain and sell to and with the said Jacob Angney a certain plantation, or tract of land, situate in the township, county and state aforesaid, adjoining lands of Martin Harman, Cornelius Myers, and others, containing one hundred and twenty-five acres, for and in consideration of the said Jacob Angney, his heirs, executors, administrators or assigns, or either of them, faithfully discharging the following covenants and agreements, to wit: said Jacob Angney shall well and truly pay, or cause to be paid, six different bonds or obligations, each conditioned for the payment of 80 dollars by the said Philip Hartman and Martin Harman to Margaret Dickey and Robert Anderson, the first of which becomes payable on the 1st day of April, A. D. 1816; and further, that said Jacob Angney shall and will grant and provide for said Philip Hartman and Elizabeth his wife, during their natural lives, the privilege to occupy that part of the dwelling house which they now live in, and provide as much flour as may be necessary to keep them in bread and of as good a quality as they whose duty it may be to provide the same may have for their own use, and a sufficient quantity of fire-wood at all times ready cut and delivered at the door, and one cow to be kept in stable room, sufficient hay and pasture, and two pigs to run at large, and as many poultry as they may have occasion for, and fruit when there be any, with privilege to the spring and spring-house, and also the use of the one-half of the garden.   And it is also agreed between the said parties, that said Jacob Angney shall and will not sell or convey the aforesaid tract of land to any person during the lifetime of said Philip Hartman : and within one year after his decease (if the same shall not happen before the said six bonds shall become due) the said Jacob Angney doth hereby obligate himself, his heirs, executors and administrators, and every of them, to pay to the other heirs of said Philip Hartman as follows, to wit, 80 dollars to Catherine, intermarried with Christian Wisler ; the second year, a like sum of 80 dollars to John Chesnut, of Lancaster county, for the use of Magdaline, intermarried with Daniel M'Neal (if the said M'Neal should

VII.—N 2

then be living), and in case said Magdaline should survive her present husband, in that case she shall receive the same herself, otherwise the said John Chesnut shall always receive the same for the use of said Magdaline, or her heirs, to be equally distributed among them, or, if left minor orphans, to be applied towards their education and maintenance; and the third year, the sum of 80 dollars to be paid to Elizabeth, intermarried with John Chesnut; and the fourth year, beginning again by paying a like sum of 80 dollars to Catherine, wife of Christian Wisler, or their legal representatives; and so in rotation, 80 dollars to be paid and received yearly and every year, as herein before directed, until each of the aforesaid three heirs have received four payments of 80 dollars each; and the thirteenth year, 80 dollars to be paid, and to be equally divided between the heirs aforesaid, as also the fourteenth year, and last payment (which will be 40 dollars), which is to be equally divided as aforesaid, making a total sum of 1080 dollars, to be paid to the several heirs aforesaid, making the whole amount of the consideration money. And said Philip Hartman is to execute a conveyance on or before the 1st day of April next, clear of all incumbrances, excepting the privileges and donations herein before reserved; and for the true performance of all and singular the covenants and agreements herein before specified, the parties hereof bind themselves to one another in the penal sum of 4000 dollars.

In testimony whereof, the parties hereto have interchangeably set their hands and seals the day and year within written.

his<br>
PHILIP X HARTMAN, [L. S.]<br>
mark<br>
JACOB ANGNEY,      [L. S.]

This agreement was recorded 9th December 1815.

The deed from Philip Hartman and Elizabeth his wife to Jacob Angney was in common form, and had the following conclusion. It was regularly acknowledged, and had a receipt for the consideration money 1080 dollars.

And the said Philip Hartman and Elizabeth his wife, and their heirs, the said described tract of land hereby granted, with the appurtenances, unto the said Jacob Angney, his heirs and assigns, against them, the said Philip Hartman and Elizabeth his wife, and their heirs, and against all and every other person or persons whomsoever, lawfully claiming or to claim the same by, from or under them or either of them, shall and will warrant and forever defend by these presents.

In witness whereof, the said Philip Hartman and Elizabeth his wife have hereunto set their hands and seals the day and year above written; subject, nevertheless, to the conditions and obligations contained in a certain article of agreement existing between the parties, bearing date the 13th of March last past.

[Bear v. Whisler.]

The court below (Reed, President) rendered a judgment for the plaintiffs.

*Watts* and *Alexander*, for plaintiff in error, cited, 7 *Serg. & Rawle* 88; 4 *Serg. & Rawle* 521.

*Biddle* and *Williamson*, for defendants in error, cited, 1 *Yeates* 393; 1 *Johns. Chan.* 308; 2 *Stor. Eq.* 462; 16 *Serg. & Rawle* 430; 2 *Watts* 307.

The opinion of the Court was delivered by

ROGERS, J.—It is a well settled doctrine of a court of equity, that the vendor of land has a lien for the amount of purchase money, not only against the vendor himself and his heirs, and others privies in estate, but also against all subsequent purchasers having notice that the purchase money remains unpaid. This doctrine, it is said, was taken from the civil law; and the principle upon which the courts of equity have proceeded in establishing this lien in the nature of a trust is, that a person having gotten the estate of another ought not in conscience, as between them, to be allowed to keep it, and not to pay the consideration money. A third person, having full knowledge that the estate has been so obtained, ought not to be permitted to keep it without making such payment; for it attaches to him, also, as a matter of conscience and duty. It has been suggested, as is said in New *v.* Brown, 6 *Ves.* 59, and Chapman *v.* Tanner, 1 *Vern. Rep.* 267, that the origin of this lien of the vendor might be attributed to the tacit consent or implied agreement of the parties. This is doubted by Justice Story, in his *Commentaries,* 465. But whatever may have been the origin of the doctrine, whether from the cause just stated, or because it is a natural equity, it is now the uncontested doctrine of courts of equity. But in Pennsylvania it has not been held to prevail. Kaufelt *v.* Bower, 7 *Serg. & Rawle* 64. Where an absolute conveyance is made of land, a receipt given for the purchase money, and the possession given to the vendee, part of the purchase money being unpaid, and the bond of the vendee, or a surety, taken for the residue thereof, the vendor has not a lien for said residue of the purchase money against judgment creditors of the vendor, whose judgments are subsequent to the conveyance, though they had notice of the balance of the purchase money due. This is undoubtedly in opposition to the rule established in chancery. There, generally speaking, it is held, that the lien of the vendor exists; and the burthen of proof is on the purchaser to establish that, in the particular case, it has been waived by the consent of the parties. If, under all the circumstances, the intention remains doubtful, the lien attaches. Taking a security, as a bond, bill or note, has been no more than a presumption of an intention to waive the lien under some circumstances, and not as conclusive of the waiver. Taking bills of exchange drawn on and accepted by a third person,

[Bear v. Whisler.]

or by the purchaser, has been deemed not to be a waiver of the lien, but to be merely a mode of payment. Nay, so far has the doctrine been extended, that taking a distinct and independent security, as, for instance, a mortgage on another estate, or a pledge of other property, has been taken not to be conclusive evidence that the lien is waived. This extension of a salutary principle has been rejected by some of the wisest judges; and it is certain that the restrictions in Kaufelt *v.* Bower have met the approbation of the profession generally in this state. In that case the court also intimate that the doctrine of implied lien does not extend to Pennsylvania. Be this as it may, *prima facie* the lien does not exist. But whether the parties may not create such a lien by clear and express words, so as to be binding between themselves and privies, when the agreement appears on the face of the title, may not be so clear. It is not denied that where the vendor retains the legal title, he may enforce the payment of the purchase money by ejectment. But this is not on the ground of an equitable lien; for an equitable lien, as is said in Kaufelt *v.* Bower, can only arise when the legal title has been conveyed. When he has the legal title, he stands in need of nothing more to enable him to recover the purchase money at law, as the land is pledged for the payment by the retention of the title. But here the legal title is in the vendee; and it is said that whatever other form, as covenant, &c., may give the plaintiff redress, yet that ejectment will not lie by the vendor against the vendee and those claiming under him with notice. This is a peculiar case. About the intention of the parties to the contract there can be no doubt. It was the clear intention to pay the debt contracted in the purchase of the land, to secure a comfortable provision for himself and family during life, and to secure the payment of certain sums of money to his children after his decease. To enforce the latter part of the agreement this suit is brought; and the question is, whether the plaintiffs are entitled to recover in this action? If they be, the court is to render judgment for the plaintiffs, to be released upon the payment of the amount due, &c. But if the court are of the opinion that the plaintiffs are not entitled to recover in this action, the judgment to be entered for the defendant. This is an equitable action, in the nature of a bill in chancery. Philip Hartman, in consideration, &c., agrees to execute a conveyance, &c., clear of all incumbrances excepting the privileges and donations as before stated. The land, as well as the vendee, personally, is pledged for the performance of the conditions by the agreement, and in this respect the deed, which was afterwards given in pursuance of the articles, is even more explicit. After the usual terms used in a deed of grant, bargain and sale, it is subjoined, in conclusion, "subject, nevertheless, to the conditions and obligations contained in a certain article of agreement existing between the parties," &c. It is contended that this is a deed on condition, that the contract is executory, something remaining of it

[Bear v. Whisler.]

to be done by the vendee, and that the vendee is a trustee, so far as the purchase money is unpaid or the other conditions unperformed. The words used in the deed, "subject, nevertheless, to the conditions and obligations contained," &c., are apt words to create a condition. There are three words that are most proper, which, in and by their own nature and efficacy, without the addition of other words of re-entry in the conclusion of the condition, do make the estate conditional, as *proviso, ita quod* and *sub conditione.* Therefore, if A grants lands to B, to have and to hold to him and his heirs, provided that, or so as, or under this condition, B do pay to A 10 pounds at Easter next; this is a good condition, and the estate is on condition, without any more words. *Shep. T.* 121. So where A conveyed land to B by deed, and the parties executed an indenture reciting the deed, and that it was the intent and meaning the deed of conveyance was on this condition and mutual agreement between the parties that B should indemnify A from all costs and charges by reason of the non payment of the quit rent due, and would also build a dwelling house on the lot, and suffer A and his wife to reside therein during their joint lives, and until it was built they were to reside in the old tenement then on the lot. B paid the quit rents, but did not build the dwelling house. B and his wife resided in the tenement during their lives, and A, some time before his death, conveyed the estate to another. It was held that the estate was on the condition of building, which B forfeited by not performing within a convenient time, whereby the estate revested in A, without the necessity of entry, to take advantage of the breach of the condition. Hamilton *v.* Elliott, 5 *Serg. & Rawle* 375. Whether this was an estate on condition depends on the intention of the parties indicated by the agreement and the deed, which must be taken as one instrument. The principal object of the contracting parties was to provide a comfortable provision for the vendor and his family. If the intention is clear, and expressed by apt words, why should the vendor be restrained to the remedy by the action of covenant? If the vendee had altogether failed in the performance of his agreement as to the vendor, would it have been an adequate remedy to the vendor to give him an action of covenant? It is manifest it would not. Would he not have been entitled to recover the possession of the premises, in such a case, by action of ejectment? But if the vendor would himself have been entitled to this remedy, I cannot perceive why the present plaintiffs are debarred from it, particularly as the object is merely, in this form of action, to enforce the performance of the agreement in good faith. The provisions of the deed equally apply to the recipients of the money, as to the vendor himself. But further, it is apparent from the face of the deed, that something remains yet to be done by the vendee, before his title is perfect; and that so far he may be viewed in the light of a trustee in equity for the vendor, notwithstanding the legal title has been conveyed. Of this the purchaser at the sheriff's sale had notice, because it is spread upon the

[Bear v. Whisler.]

face of the title under which he claims.    We must look to the sub-
stance of the agreement, and not to the form.    In Stauffer *v.* Cole-
man, 1 *Yeates* 393, it was held, that an instrument of writing for the
sale of lands shall be construed as a mere agreement, though it
has very strong expressions of a deed and if such appears to have
been the intention of the parties.    So a purchaser at sheriff's sale
takes the land subject to the payment of purchase money which
appears on the face of the deed to remain unpaid, and of which he
has notice.    Irvin *v.* Campbell, 6 *Binn.* 118.    For these reasons we
are of opinion that the action of ejectment will lie; and, consequently,
that the judgment should be affirmed.

Judgment affirmed.