# Strauss's Appeal.

*Liens created by deed, when divested by a sheriff's sale.—Mortgage subsequent to such lien, not protected by Act of 1830, but divested by sheriff's sale, and entitled to payment out of proceeds.*

1. Parties to deeds of conveyance may by clear and express words create liens upon land, either for purchase-money or for the performance of collateral conditions, which will be binding between themselves and their privies; but such liens will be divested by subsequent sheriff's sales, unless they are in the nature of testamentary provisions for wives and children, or are incapable of valuation, or are expressly created to run with the land.

2. Thus where a father conveyed land to his son "subject to the payment of" a sum of money to the heirs of himself and wife, immediately after their decease, and the son again sold (taking a mortgage to himself for purchase-money) to a third person, as whose property it was sold at sheriff's sale after the death of the parents; on distribution of the proceeds, it was *Held*,

(1.) That a lien was created by the deed of the father to the son, such as destroyed the priority of the mortgage taken by the son from his vendee:

(2.) That by the death of the parents before the sheriff's sale, the lien was divested thereby, and was entitled to be first paid out of the proceeds, and that the mortgage also divested by the sale was next entitled to payment.

APPEAL from the Common Pleas of *Lehigh county*.

This was an appeal by Peter Strauss, administrator of Henry Strauss, deceased, from the decree of the court below, on the distribution of the proceeds of the sheriff's sale of John Strauss.

All the material facts of the case will be found in the opinion of this court.

*Elisha Forrest*, for appellant.

*Schall & Stiles*, for appellee.

The opinion of the court was delivered, May 15th 1865, by

WOODWARD, C. J.—This is a question of distribution of the proceeds of the sale made by the sheriff, of the real estate of John Strauss, at the suit of Maria Strauss, a judgment-creditor. The material facts are these:—On the 16th April 1853, Henry Strauss and wife conveyed the land to their son Peter in consideration of $300, subject to the payment of the further sum of $400 to the heirs of Henry Strauss and Susannah his wife, or those legally entitled immediately after the death of the said Henry and Susannah his wife.

On the 25th December 1859, Peter Strauss and wife conveyed the land to John Strauss, as whose property it was sold at sheriff's sale, and of even date therewith John Strauss executed a mortgage of the land to Peter to secure purchase-money.

Subsequently, to wit, 7th March 1862, Adam German reco-

13 WR.—23

[Strauss's Appeal.]

vered a judgment against John Strauss for $212, and May 7th 1863, Maria Strauss entered a judgment against him for $127. On this last judgment the sheriff's sale took place, and the proceeds, $850, being brought in court, the judgments of German and Maria Strauss were directed to be paid and the balance retained undistributed. To Peter Strauss, as administrator of his father or as mortgagee of John, nothing was distributed, it being the opinion of the court that the reservation or charge in the deed of April 16th 1853, constituted an estate and not a lien, and therefore that the purchaser took the estate subject both to that charge and to the lien of the mortgage. From this decree Peter Strauss appeals both in his representative and his personal character.

It is very manifest that if the deed of April 16th 1853, Henry to Peter Strauss, constituted a lien, the mortgage of John to Peter was not prior to all other liens, and so was not within the protection of the Act of 1830, and was divested by the sheriff's sale. And if divested by that sale, the mortgage should have been paid out of the proceeds. But not more certainly was the mortgage entitled to the proceeds than the prior lien, if one existed, because the condition on which the $400 were to be paid, to wit, the death of Henry and Susannah Strauss, had happened before the sheriff's sale, and the money, if ever payable, was due and payable then. Had the money been applied, first to this lien and next to the mortgage, it was insufficient to pay them fully, and nothing would have been left for the subsequent judgment-creditors.

The question, therefore, seems to be, whether Henry Strauss and wife by their deed to Peter created a technical lien.

The language of the conveyance was very full and precise. It not only mentioned the $400 in the consideration clause, as "hereinafter reserved," but in the *habendum* the conveyance was " subject nevertheless to the reservation contained in a certain article of agreement made between the said Henry Strauss and Peter Strauss, bearing date the 23d September 1852, wherein is reserved, among other things, that the sum of $400 shall be paid by the said Peter Strauss, immediately after the decease of the said Henry Strauss and Susannah his wife, to the heirs or those legally entitled thereto, and also subject to a certain bond duly executed, bearing even date herewith, conditioned for the payment of the said $400, contained in the article of agreement to be paid agreeably to said article of agreement."

The article of agreement here referred to bound Henry Strauss to convey the land to Peter in consideration of $700—$300 to be paid down, and $400 to the heirs immediately after the death of Henry and Susannah, and meantime, instead of receiving interest, they were permitted to live on the land, and enjoy a share of its

proceeds during life. The bond was a further security for performance of these conditions.

The death of Henry and Susannah put an end to all the conditions of the bargain, except only the payment of the $400, and whether that sum was charged as a lien is our question.

In Stewartson v. Watts, 8 Watts 372, the words were "subject to the payment of the said sum of $2804.21 (purchase-money), intended to be secured by a mortgage," and the late Mr. Williston and myself, who argued for the plaintiff in error, failed to convince the court that that was a reservation of interest in the land. The court held it to be not only a lien, but one which was divested by a sheriff's sale on a junior judgment. To the same effect was the ruling in The Episcopal Academy v. Frieze, 2 Watts 16, and in Barnitz v. Smith, 1 W. & S. 145.

In the late case of Hiester v. Greene, 12 Wright 96, it was admitted, reluctantly, and only from deference to these authorities, that parties might by express words in deeds and articles of agreement, as well as in wills, impose liens on their land which would or would not be divested by sheriff's sales on subsequent liens, according to the nature and quality of the lien imposed by agreement, and a lien was not sustained in that case only because no words had been used to charge the land. "Subject to the payment of" are apt words for imposing such a lien, and much as it may be regretted that we tolerate any liens, except such as appear of record in the appropriate registry, we must recognise a lien like the present when parties have so plainly impressed it upon the land. We cannot agree with the learned judge that it was the reservation of an estate as contradistinguished from a lien. The grant of an estate on condition, it undoubtedly was, and any party interested in the performance of the condition might enforce it by action of ejectment, which is the doctrine of Bear v. Whistler, 7 Watts 144, but it was none the less a lien. And even if it were called an estate reserved, it would still have to be considered as a lien. This word lien is a derivative from the Latin word *ligo*, which means to bind, to tie around, and when parties have tied a specific debt to land, whatever other name you call it, lien is one of its appropriate titles. Counsel argued that this case was ruled by Bear v. Whistler, without adverting to the distinguishing circumstances that that was ejectment by a party seeking to enforce the condition or lien; this a distribution in which the party in interest claims that his lien was divested by the sheriff's sale; and besides, there the payment claimed was a suspended one at the time of the sheriff's sale—here it was presently due. Had Henry Strauss or his wife been living at the sheriff's sale, the lien had not been divested: Dewalt's Appeal, 8 Harris 239; and either of them might have brought ejectment against the purchaser to enforce it under the

name of a condition, and thus Bear *v.* Whistler would have repeated itself. But to liken this case in its present circumstances to that, is to cheat oneself with a false analogy.

The learned judge was no less mistaken in supposing that the principles of Dewalt's Appeal were applicable here. There the existence of the lien was assumed, and the point ruled was that it survived the sheriff's sale, because it was a suspended payment that could not be made out of the proceeds. The court, said Judge Lowrie, will not undertake to administer the fund by investing it in order to fulfil the purposes of the charge, and no one is now entitled to receive it. On these grounds it was held to be a continuing lien. There was no subsequent mortgage, as here, to be affected by it, and nothing ruled there is applicable to a lien presently due, with parties ready and entitled to receive it, and which calls for no other administration at the hands of the court than mere distribution.

We conclude, therefore, by what seems to us an inevitable deduction, that a lien was created by the deed of Henry Strauss and wife to their son; that it was such a lien as destroyed the priority of the mortgage of John to Peter; that the death of the parents, on which payment of it was suspended, having happened before the sheriff's sale, it was a lien divested by that sale, and was entitled to be first paid out of the proceeds, and that the mortgage, also divested by the sale, was entitled to take the residue of the fund.

> And now, to wit, May 11th 1865, this cause having been argued and considered, it is ordered that the decree of distribution made in the court below be reversed, and that the fund in court be paid to the administrator of Henry Strauss for the use of his heirs, and the balance to Peter Strauss upon the mortgage of John Strauss to him, and that the appellees pay the costs.

Concurring opinion by

AGNEW, J,—Having united with the majority in the decision of Hiester *v.* Green, which was urged earnestly against our conclusion in this case, I am induced to say a few words in explanation of the difference between the cases. The question here arises upon a distribution of the proceeds of the sheriff's sale of the real estate of John Strauss. The deed from Henry Strauss and wife to Peter Strauss was made in express terms, subject to the payment of four hundred dollars at the death of Henry Strauss and his wife, referring both to the agreement for the sale of the land, and to a bond of even date with the deed as the evidence of the debt. The deed from Peter to John Strauss was also expressly subject to the payment of the same debt, Peter

taking as the security of the purchase-money to himself a mort-gage, which was recorded before any of the judgments against John Strauss were entered. At the time of the sheriff's sale both Henry Strauss and his wife were dead; the reservations of the house and one-half of the profit of the land, during their lives, had become extinct, and the estate vested in them by these reservations had therefore expired by its own limitation, leaving nothing but the specific pecuniary charge of $400, then over due.

This statement, eliminating the true state of the case from the not very clear mass of facts reported by the auditor, discovers at once the error into which the court below fell, in assuming that the reservations in the deed constitute an estate and not a lien. This would be true of the special reservations in the land, and had the estate of John Strauss been sold in the lifetime of Henry Strauss or his wife, the conclusions of the court would have been correct as to the money charge, which not being due, would have been governed by Dewalt's Appeal, 8 Harris 236, upon which the learned judge relied. Then here as there the payment of the money would have remained contingent and sus-pended upon the life in being, and there being no one to receive it, the court will not, and ought not (as remarked by Lowrie, J.), to undertake to administer it so as to provide a substitute for the plan devised by the parties.

But as this case stood at the sheriff's sale, the reservations in the land having expired, it was that of a certain specified sum of money over due and payable, which by the express words of the deed had been distinctly charged upon the land conveyed, constituting a lien according to the terms of the deed, clearly manifesting the intent to charge the land with its payment. It is therefore directly within the distinction taken by the chief justice in the recent case of Hiester v. Green, from Lancaster county: 12 Wright 96.

The question in that case, as stated by him, was "whether purchase-money reserved in a deed, but not expressly charged upon the land conveyed, is a lien upon that land." The instru-ment upon which Hiester and Green arose was a release in con-sideration merely and no more, of the payment to Cynthia Green yearly and every year, during the continuance of her widowhood, of the sum of one hundred dollars. It was not made subject to the payment, and contained no language whatever indicative of an intent to charge the land with payment. It was a case purely of equitable lien to be inferred only from the fact that the con-sideration remained unpaid, and was attempted to be supported upon the authority of Nease's Appeal, 7 Casey 293. But a majority of the court looking upon Nease's Appeal as a case likely to introduce the long-discarded doctrine of inferential equitable liens, declined to follow it; and the chief justice in

[Strauss's Appeal.]

delivering their opinion placed this doctrine upon what is conceived to be the true Pennsylvania basis, viz., that such liens must arise from the express charge of the parties and not by implications. The doctrine of equity, that a lien exists for unpaid purchase-money, never was adopted here, but it had always been held, certainly always since Kauffelt *v.* Brown, 7 S. & R. 64, that if a vendor made a deed, and took no lien by mortgage, judgment, or express charge in the conveyance, no lien for the purchase-money existed. Nease's Appeal sought to imply an intention to charge from the fact that the price being unpaid, a duty to pay arose in equity. But couched in whatever terms it might be, it was a departure from the Pennsylvania doctrine, that liens are matters of positive and not implied existence, and arise either from the operation of law or the act of the parties. Hiester *v.* Green brought us back to the rule that all charges upon real estate must appear affirmatively, and in such form as to admit of no doubt of the intent to charge, and therefore of easy determination by those who examine the title. It must be conceded that a rule which is dependent upon mere inference or construction affords no safe guide. Hence Hiester *v.* Green intended to say, and did expressly rule, that the lien of purchase-money is not to be left to mere equity, or to an implication arising in merely equitable consideration, but must appear in an express form, where the intent to charge is apparent because it is expressed. This affords a safe and easy guide to purchasers who look into the title, and if they do not find this expressed intent, are at once relieved from a mere consideration of equity, and a balancing of results accompanied by more or less difficulty in determining their true effect.

From these views it follows that the debt of $400 being expressly charged was the first lien, and was payable out of the proceeds of sale, and consequently that, the sale having divested the lien of Peter Strauss's mortgage, the remainder of the proceeds must be applied to it.

The decree of the Court of Common Pleas is therefore reversed, and it is ordered that the proceeds of the sheriff's sale be distributed in conformity to these views, and the record is ordered to be remitted with direction to make distribution accordingly, and the costs of appeal are decreed to be paid by the appellees.