KENYON v. MULERT.

(Circuit Court of Appeals, Third Circuit. February 1, 1911.)

No. 61.

1. VENDOR AND PURCHASER (§§ 54, 85*)—RESCISSION OF EXECUTORY CONTRACT —RECONVEYANCE OF PURCHASER'S EQUITY.

Under the law of Pennsylvania, an executory contract for the sale of real estate on which the purchaser has made a payment vests him with an equitable estate in the land to the extent of the payment made, but a conveyance of such equity to the vendor, who still retains the legal title, and his acceptance of the same, operates as a rescission of the contract, and the vendor cannot recover the remainder of the purchase money from the vendee.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 85, 141–143; Dec. Dig. §§ 54, 85.*]

2. BANKRUPTCY (§ 318*)—PROVABLE DEBTS—PURCHASE MONEY OF LAND—RE-SCISSION OF CONTRACT.

Claimant contracted to sell bankrupt certain real estate in Pennsylvania, and received a payment thereon, and, on default of payment of the remaining purchase money, obtained a decree for specific performance in a state court. After the bankruptcy, the decree not having been carried out, he applied to the court of bankruptcy to have the trustee required to accept or refuse the property, and, in conformity to the action of the creditors, the court directed the trustee to execute a quitclaim deed to claimant, which was done, and the deed was accepted by him. Held, that such action was within the powers of the court and effected a rescission of the contract, and that claimant could not thereafter prove a claim for purchase money due thereunder against the estate.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 318.*]

Appeal from the District Court of the United States for the Western District of Pennsylvania.

---

In the matter of Harry Davis, bankrupt. Appeal by Thomas Kenyon from an order disallowing his claim. Affirmed.

Marron & McGirr, for appellant.

Maurice L. Avner and Samuel S. Robertson, for appellee.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

BUFFINGTON, Circuit Judge. This is an appeal by Thomas Kenyon from an order made by the District Court affirming the action of the referee in refusing a claim of said Kenyon against the bankrupt estate of Harry Davis. On April 2, 1908, the latter was adjudged bankrupt, and on May 28, 1908, Kenyon filed proof of the claim here in question for $52,174.41, alleged to be the purchase money, costs, and taxes of land sold on an executory agreement by Kenyon to Davis prior to bankruptcy, less $70,000, the value of the land, which land Kenyon retains and has never conveyed to Davis.

The facts of the case are as follows: By article of agreement Kenyon in February, 1906, agreed to sell for $200,000, and on settlement of the purchase money convey to Davis this real estate. Davis paid some $15,000 and defaulted on the balance, whereupon Kenyon tendered him a deed and demanded performance. Davis having failed to perform, Kenyon began a proceeding in the state court for specific performance. Such performance was decreed, the decree providing for the payment by Davis of $85,000, the execution of a bond and mortgage for $100,000, and, on payment of and securing such sums, Kenyon was ordered to convey. On February 15, 1907, the building on the land was burned, and subsequently Kenyon received the insurance, $86,237.50, of which sum the state court applied $39,622.63 to the money decree of $85,000, and the balance of $46,614.87 to the reduction of the mortgage decree of $100,000. Davis had not paid the money decree or given the mortgage, and Kenyon had not conveyed the legal title when Davis went into bankruptcy. Subsequent to the bankruptcy Kenyon took no steps to enforce his decree in the state court, but on August 19, 1908, presented his petition to the referee, setting forth, inter alia, that Davis's trustee "has never elected to take or refuse said property which petitioner sold to said Davis by said article of agreement, and petitioner is desirous of having the title of said property settled or to recover the amount due him under the said articles of sale, which is considerable over $100,000." To this petition the trustee answered, alleging "that there is no provision of law requiring the trustee in bankruptcy to elect to take or to reject real estate of the bankrupt under circumstances such as are set forth in the said petition"; that Kenyon had himself rescinded the contract after the bankruptcy by advertising and trying to sell the property, without leave of the District Court; that the trustee had acquiesced in such rescission, and averred the trustee's right to sue for and recover from Kenyon the $15,000 of purchase money Davis had paid. Thereupon Kenyon replied, denying rescission, and stating:

"Said Thomas Kenyon says that the attorney of said trustee, on various occasions, had informed said Thomas Kenyon and his attorney that said trustee would not accept said real estate, but, in order to clear the title to said

real estate, it is necessary that said trustee should put his declination on record, and that is the whole object of the present proceedings."

On hearing the rule on the trustee to take or refuse, the referee made an order that:

"Said rule having come on for hearing before me at a meeting of the creditors held November 10, 1908, and having been fully argued by counsel, and no creditor desiring that the trustee should accept said property under the terms and conditions on which it was sold to the bankrupt, it is ordered that the trustee be, and he is hereby, authorized and directed to make, execute, and deliver to said Thomas Kenyon a quitclaim deed for the interest of the bankrupt, Harry Davis, in said real estate."

In pursuance of this order, the trustee executed and delivered such deed to Kenyon, and it was of this the court in its opinion later said:

"It was admitted at the argument by counsel for Kenyon that the quitclaim deed which the trustee was ordered to execute and deliver was executed and delivered and accepted by Kenyon."

Such being the case, the contract having been rescinded, the equitable interest of Davis in the premises surrendered, and Kenyon being the absolute owner of the land, is he entitled to prove his unpaid purchase money as a claim against the estate? The referee and court below held he was not, and in that holding we find no error.

Now, the fact is that the creditors of this estate at a meeting held before the referee declined to carry out this contract and the trustee by direction of the referee has executed and delivered to the owner of the property, who has accepted the same, a formal release of any interest of the bankrupt estate in the land. This was a rescission in fact and in law of the contract. The owner of the land cannot have at the same time both his land and the price thereof, and, having accepted the rescission, the contract no longer exists. His claim therefore has no contract to support it. This conclusion follows from the decisions of the Pennsylvania courts. In that state, where land is sold by executory contract, the vendee has an equity to the extent of the purchase money he pays, and the vendor who holds the legal title until the purchase money is all paid is a trustee meanwhile for the vendee pro tanto to the extent of the purchase money paid. Purviance v. Lemmon, 16 Serg. & R. 294; Bear v. Whisler, 7 Watts, 144; Bayler v. Commonwealth, 40 Pa. 37, 80 Am. Dec. 551; Phillips v. Swank, 120 Pa. 76, 13 Atl. 712, 6 Am. St. Rep. 691. When, however, the equitable interest of the vendee becomes united to the legal title of the vendor, the executory contract is rescinded, and there can be no recovery by the vendor of the purchase money from the vendee. Purviance v. Lemmon, supra, and Bradley v. O'Donnell, 32 Pa. 280, where it is said:

"Executory articles of agreement for the sale of land establish the relation of trustee and cestui que trust between the vendor and vendee, and a reunion of the equitable with the legal estate is virtually a rescission of the contract."

In Wolfe's Appeal, 110 Pa. 129, 20 Atl. 410, the Supreme Court of that state, referring to an executory contract for the sale of land, say:

"The vendee acquires merely an equitable interest in the land, a right to a conveyance of the legal title upon paying or securing, as may be agreed

upon, the residue of purchase money. In the meantime the vendor retains the legal title as security for the unpaid purchase money; and, if on a lien therefor he sells and purchases the equitable interest of his vendee, the contract is thereby rescinded, and he is precluded from recourse to the vendee personally for the balance of purchase money that may not be paid by the proceeds of sale."

The principle of this and numerous other cases of that state that might be cited is that a reuniting of the equitable estate under an executory contract to the vendee's legal estate extinguishes such contract. That principle is conclusive of this case, and precludes Kenyon, who has never conveyed the legal title and has reunited thereto Davis's equitable interest, from collecting the purchase money also. It is said, however, that the referee had no authority to direct the trustee to execute the quitclaim deed, and that a cloud may remain on the title. We cannot agree to that proposition. Davis never had, and his estate has not now, title to Kenyon's property. By the contract relation between them, he had an equitable interest commensurate with the amount of purchase money he had paid and a right to demand a conveyance of title when he had paid it all. He has never paid it all. His creditors have elected that his trustee should not fulfill the contract; and the trustee, in pursuance of an order of the court, has evidenced such action on the part of the creditors by a formal release and surrender of the bankrupt's right to performance. The only source from which any cloud upon this title could arise was from the bankrupt's estate and the trustee has surrendered such claim at the instance of the creditors. And, if authority on the court's part is needed to order the trustee, at the instance of creditors, to do what he has done, we think it exists under Act July 1, 1898, c. 541, § 58, 30 Stat. 561 (U. S. Comp. St. 1901, p. 3444), which authorizes action on "the proposed compromise of any controversy," section 55, which provides, "The creditors shall at each meeting take such steps as may be pertinent and necessary for the promotion of the best interests of the estate," and section 2, which authorizes courts to "cause the estates of bankrupts to be collected * * * and determine controversies in relation thereto." We are clear that this vendor having received from Davis before bankruptcy $15,000 in cash and $86,000 more in insurance, and having the absolute title to the property and a surrender of Davis's equity, has no standing to enforce the payment of purchase money, or any part thereof, at the expense of the bankrupt's creditors.

The decree of the court is therefore affirmed.