## Helfrich *versus* Weaver.

1. Martin died intestate seised of real estate which was sold to Kuntz subject to the dower of Martin's widow; the land being devised by Kuntz to his wife for life or during widowhood, a portion was sold to Helfrich by order of the Orphans' Court in proceedings under the Act of April 18th 1853, the purchase-money remaining charged upon the premises during the life or widowhood of the widow of Kuntz, the interest to be paid to her annually. *Held*, that the lien of a mortgage subsequently executed by Helfrich upon the premises, was not discharged by a sheriff's sale under a subsequent judgment against him.

2. Liens, the existence of which prior to a mortgage will cause it to be divested by a sheriff's sale, must be such as are themselves divested and thrown upon the fund.

3. The charge in favor of the widow of Kuntz, immediately prior to the mortgage, was a fixed lien or interest in the land, not discharged by the sheriff's sale.

4. A sheriff's sale subject to a fixed lien is necessarily subject to all prior encumbrances.

5. Hiester *v.* Green, 12 Wright 96, affirmed.

March 18th 1869.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Lehigh county :* No. 340, to January Term 1866.

The proceedings in this case were commenced by a scire facias sur mortgage, in which Joseph Weaver, administrator of Solomon Weaver, deceased, to the use of Sarah Mennig, was plaintiff, and John H. Helfrich, "his feoffees and terre-tenants," were defendants.

The following facts, in the nature of a special verdict, were agreed upon and submitted for the opinion of the court :—

Prior to April 12th 1835 Jacob Martin died seised in fee of four acres of land in the borough of Allentown; on that day the administrators of Jacob Martin, deceased, sold the same, under proceedings in partition in the Orphans' Court of Lehigh county, to Peter Kuntz, subject to the dower of Jane Martin the widow of the decedent.

Peter Kuntz died seised of the tract so purchased, having by his will, proved February 23d 1846, devised it to his wife, as follows :—

"My dwelling-house in Northampton township" (now in borough of Allentown) "in which I live at present, with four acres of land adjacent thereto, and all the out-buildings thereupon, I give and bequeath to my aforesaid wife Elizabeth, with all my household goods, interest on bonds or notes and all other personal property, for and during her natural life, or so long as she shall remain my widow. But in case she should marry again, the aforesaid executor shall appraise and make a lawful inventory of the aforesaid

11 P. F. SMITH—25

[Helfrich *v.* Weaver.]

dwelling-house, land and appertenances, and also of all the aforesaid personal property, and then sell all said personal property at public vendue, and shall put the proceeds at interest on good and sufficient security, and the aforesaid dwelling-house and land belonging thereto, shall be rented till my aforesaid daughter Maria shall attain lawful age, after which time she shall be the only lawful owner thereof for ever, with the charge or reservation that my aforesaid wife shall draw one-third of the rent thereof during her natural life, and it shall be a charge and lien on said house during said period."

On the 20th February 1855, upon the petition of Elizabeth Kuntz, the widow of Peter Kuntz, and of the other parties in interest, under the Act of April 18th 1853, the Orphans' Court directed the executor of Peter Kuntz to sell a portion of the four acres, the purchase-money to be a lien upon the premises until fully paid, the disposition of the purchase-money to be decreed by the court.

At the April Term the executor returned that he had sold the property to John H. Helfrich for $3600. The sale was confirmed by the court, and the court directed that the purchase-money remain charged on the premises during the lifetime or widowhood of the widow of the said Peter Kuntz, deceased, the interest thereof to be paid to the said widow, agreeably to the directions of the will of said deceased, and at the death or marriage of the said widow the principal sum to be paid and divided according to said will—the deed to the purchaser to be made subject to the purchase-money and interest as aforesaid.

A deed for the property was delivered April 11th 1855: it recited the proceedings in the Orphans' Court, and making the premises thereby conveyed "subject, nevertheless, to the payment of the purchase-money hereinbefore mentioned, with the annual interest thereon."

On the 1st of April, 1857, Helfrich executed a mortgage to Solomon Weaver for $1200 upon a part of the premises sold to him by the executor of Kuntz; this mortgage was afterwards assigned by the administrator of Solomon Weaver to Sarah Weaver, his widow, who afterwards intermarried with Joseph Mennig. On the 3d November, 1862, under a *testatum fieri facias* from Berks county, against Helfrich, the land covered by the mortgage was sold by the sheriff, for $480, to John H. Oliver, who defended in this action as terre-tenant.

At the time of this sheriff's sale, Jane Martin, the widow of Jacob Martin, was still living, and the principal sum charged upon the four acres in her favor, together with a small amount of accrued interest, was still unpaid; Elizabeth Kuntz, the widow of Peter Kuntz, was also still living and unmarried, and the whole of the purchase-money ($3600), of that portion of the four acres

[Helfrich *v.* Weaver.]

conveyed by the executor of Kuntz to Helfrich, together with a portion of the accrued interest, was also unpaid.

At the date of this sale by the sheriff, the mortgage from Helfrich to Weaver was the first encumbrance upon the property covered by it, except the dower of the widow of Jacob Martin, and the encumbrance mentioned in the deed to Helfrich in favor of the widow and other devisees of Peter Kuntz.

It was agreed that if the court were of opinion that the lien of the mortgage was discharged by the sheriff's sale to Oliver, then judgment to be entered upon the *scire facias* for the defendants: if the court were of opinion that the lien of the mortgage was not discharged by the sheriff's sale, then judgment to be entered upon the *scire facias* for the plaintiff for $1200, with interest from January 15th 1861; the costs to follow the judgment.

The court directed judgment to be entered for the plaintiff for $1200, with interest from January 15th 1861.

The defendants took a writ of error and assigned for error the entry of judgment for the plaintiff.

*G. B. Schall* and *J. D Stiles* (with whom was *E. J. Moore*), for plaintiff in error.—Unpaid purchase-money reserved in a deed of conveyance is a technical lien: Long *v.* Long, 1 Watts 265; Stewartson *v.* Watts, 8 Id. 396; Tower's Appropriation, 9 W. & S. 103; Bury *v.* Zeiber, 5 Barr 433; Neas' Appeal, 7 Casey 293; Heister *v.* Green, 12 Wright 96; Strauss' Appeal, 13 Id. 353; Act of April 18th 1853, Pamph. L. 503, Purd. 851; Cowden's Estate, 1 Barr 267; Kurtz's Appeal, 2 Casey 465; Barnitz *v.* Smith, 1 W. & S. 143.

*C. M. Runk* and *J. H. Campbell* (with whom was *W. S. Marx*), for defendant in error, cited Dewalt's Appeal, 8 Harris 236; Baer *v.* Whisler, 7 Watts 144; Strauss's Appeal, *supra*; Zeigler's Appeal, 11 Casey 173; Schall's Appeal, 4 Wright 170; Shaupe *v.* Shaupe, 12 S. & R. 12; Dietz *v.* Beard, 2 Watts 171; Miller *v.* Leidig, 3 W. & S. 458; Thomas *v.* Simpson, 3 Barr 69; Act of April 19th 1794, § 22; Act of April 7th 1807, § 6; Act of April 14th 1828; Act of March 29th 1832, §§ 41, 43, Purd. 297; Act of April 8th 1833, § 1; Bachman *v.* Chrisman, 11 Harris 163; Act of April 2d 1804; 4 Sm. L. 183; Act of April 18th 1853, *supra*; Carlyle *v.* Cannon, 3 Rawle 489; Anderson *v.* Greble, 1 Ash. 136; 1 Washb. on Real Property, pp. 46, 47; Willard *v.* Norris, 2 Rawle 56; Cowden's Estate, *supra*; Shep. Touchstone 121.

The opinion of the court was delivered, May 11th 1869, by

SHARSWOOD, J.—By the Act of Assembly of April 6th 1830, entitled "A supplement to an act entitled an act for taking lands in execution for the payment of debts, passed in seventeen hundred and five," Pamph. L. 293, it is provided that "where the

[Helfrich *v.* Weaver.]

lien of a mortgage upon real estate is or shall be prior to all other liens upon the same property, except other mortgages, ground-rents and the purchase-money due to the Commonwealth, the lien of such mortgage shall not be destroyed or in any way affected by any sale made by virtue or authority of any writ of venditioni exponas." The word "lien" in its general and popular usage is a word of very vague and indefinite import, and is often applied even in well-considered judgments to all charges or encumbrances on land which follow it in the hands of a purchaser without regard to their precise character. That it was not used in this wide sense in the act is apparent when we recall the history and occasion of its passage. The case of Willard *v.* Norris, 2 Rawle 56, had been then recently decided, in which it was held that when land, subject to a mortgage, is sold under a subsequent judgment, the purchaser at sheriff's sale takes it discharged of the lien of the mortgage.

This decision took the profession and the community very much by surprise, as it was very generally considered that for all purposes of security and remedy, a mortgage was what it purported to be, a conveyance of the land. It was a favorite kind of investment, and mortgagees were alarmed at the probable consequences, as such sales might take place without notice to them at amounts totally inadequate, and thus their interests be sacrificed. It was to quiet this alarm that the act in question was passed. It was intended to protect mortgages from divestiture by a sheriff's sale under a junior encumbrance; but when there existed prior liens, which would otherwise have been divested, it was considered that the mortgagee was not entitled to this privilege. He had taken his mortgage subject to such prior lien, by proceedings under which it could be divested. Of this there never had been or could be any question; and therefore when such prior lien existed there was no reason why he should be protected from the same consequences in case of a sale under a junior encumbrance. He was bound already to vigilance against the elder, and it added nothing to his risk to require him to keep awake as to any younger one. Such appears to have been the reason of the enactment. It has accordingly never been held that the existence of prior estates or charges—though in a general and popular sense liens—were within the purview of the act. There are but few cases in which this precise question has been directly presented for determination. A widow's third under the intestate laws, secured by recognisance in proceedings for partition in the Orphans' Court, to remain charged upon the premises during her life, she to receive the interest thereof annually, has been decided not to be such a lien: Schall's Appeal; Gaul *v.* Lauer, 4 Wright 170. In a still later case, Miners' Bank *v.* Heilner, 11 Id. 452, it was held that rent due under a coal lease is not such a prior lien, as that a mort-

[Helfrich *v.* Weaver.]

gage of the leasehold will be discharged by a sheriff's sale of the term under an execution against the lessee. It is to be recollected that by the 8th section of the Act of April 27th 1855, Pamph. L. 369, it was provided that such mortgages should have the same effect " as to the lessee's interest and title as in the case of the mortgaging of a freehold interest and title, as to lien, notice, evidence and priority of payment," and should "in nowise interfere with the landlord's rights, priority or remedy for rent." It was said by Chief Justice Woodward in the opinion: "The legislature must be supposed to have used the word lien in that act in its ordinary Pennsylvania signification of an ascertained sum of money on the public records, which are provided by law as means of notice to all the world." This generalization is perhaps too broad. Neas's Appeal, 2 Casey 293, and Strauss's Appeal, 13 Wright 353, may be referred to as cases in which a mortgage was held to be divested by liens not of this character. They were in both instances created by deed, but standing in the title, of which the mortgagee was bound to take notice. But if this general statement of Chief Justice Woodward had been qualified and restricted to such liens only as were themselves subject to divestiture by a sheriff's sale, it would seem to present a rule simple and intelligible, and at the same time reasonable and just. It may be thus stated:•Liens, the existence of which prior to a mortgage will cause it to be divested by a sheriff's sale, must be such as are themselves divested by the sale and thrown upon the fund. It may be well asked, why should the statutory interest of a widow under the intestate laws prevent the divestiture of a mortgage, and any other interest in the land of the same character, created by deed or will, and equally good as a fixed lien or encumbrance, not have that effect? It would be to make a distinction where there is no difference. It is certainly important that the cases on this subject should be consistent. Contrarieties and anomalies would mar the practical working of the system, and tend to darken counsel in a matter in which the path prescribed should be especially clear and distinct. Bidders at judicial sales ought to have a plain chart by which to shape their course.

It is strenuously urged that Cowden's Estate, 1 Barr 267, does not accord with this principle, and that there, although there was a prior fixed lien, the mortgage was paid out of the fund. In that case, however, besides the annuity created by the will of the devisor and which was held to continue as a lien unaffected by the sale, there were also legacies charged on the land, which were not fixed liens, but were divested, and it followed of course that the subsequent mortgage by the devisee was divested also. In Kurtz's Appeal, 2 Casey 465, it is true that the widow's interest, though itself not divested by the sale, was held to be a lien, the existence

of which operated to throw the subsequent mortgage on the fund. But that case as to the principal point, that the widow's interest was a lien within the Act of 1830, has been overruled by Schall's Appeal, 4 Wright 170. " We are very sure," said Lowrie, C. J., " that the decision in that case did exact justice to the parties; but the reasoning on which it is founded has ceased to satisfy us. We think now that the widow's statutory dower ought not to be treated as a lien on land, but as an interest in it; and that for this reason also, the decree must be affirmed; because then the fixed lien (i. e., the mortgage) immediately succeeding it, prevents the discharge of even the accrued interest."

That the charge in favor of Elizabeth, the widow of Peter Kuntz, immediately prior to the mortgage in this case, was a fixed lien or interest in the land, not discharged by the sheriff's sale, would hardly seem to admit of dispute. The deed by the executors of Peter Kuntz to John H. Helfrich recited the order of the court " that the purchase-money remained charged on the premises during the lifetime or widowhood of the widow of the said Peter Kuntz, the interest thereof to be paid to the said widow, agreeably to the directions of the will of said deceased, and at the death or marriage of the said widow the principal sum to be paid and divided according to said will;" and the conveyance was made expressly subject to the payment of the purchase-money as before mentioned. It was an express charge or lien, therefore, standing in the title: the annual payment of interest for an uncertain period of time—life or widowhood—that is a kind of lien, as Mr. Justice Huston says, from which land cannot be discharged by sheriff's sale, unless when it is sold on a prior judgment or mortgage: Fisher *v.* Kean, 1 Watts 259. In Bear *v.* Whisler, 7 Watts 144, the conveyance of a tract of land, subject as part of the consideration to the maintenance of the grantors during their lives, was held to create an estate upon condition, which might be enforced by ejectment against a purchaser at sheriff's sale; and in Dewalt's Appeal, 8 Harris 236, it was laid down as a general rule governing in all such cases that the law will in no case discharge liens by judicial sales, when the charge stands in the title, and can be discharged only by the court undertaking to administer the fund by investing it, in order to fulfil the purposes of the charge. Many other cases might be referred to, but it will suffice to add Hiester *v.* Green, 12 Wright 96, where it was laid down that the parties to deeds of conveyance may by clear and express words create liens upon land, either for purchase-money or for performance of collateral conditions, which will be binding between themselves and their privies; but such liens will be divested by subsequent sheriff's sales unless—1. Where liens are created by last wills and testaments as permanent provisions for wives and children; 2. Where, from the nature of the encumbrance, it will

[Helfrich *v.* Weaver.]

not readily admit of valuation; and 3. Where it is plain from the agreement of the parties that the encumbrance was intended to run with the land. It is clear that to divest the lien of the purchase-money in this case would be to defeat the very object of its creation, a permanent investment during the lifetime or widowhood of Elizabeth Kuntz. If this would have been so, had this been a mere deed *inter partes* making their own condition, *a fortiori*, must it hold when it is considered that it is a deed made by the order of an Orphans' Court empowered to make such decree by the Act of April 18th 1853, "An act relating to the sale and conveyance of real estate" (Pamph. L. 503), the 5th section of which declares "that the purchase-money or rent reserved shall be a lien on the premises sold or let, until fully paid according to the decree of the court." The prior interest of Jane Martin was a fixed lien of itself according to Schall's Appeal: but if it was not, it was made so by being prior to the charge of Elizabeth Kuntz; for nothing is better settled than that a sheriff's sale subject to a fixed lien is necessarily subject to all prior encumbrances: Lauman's Appeal, 8 Barr 473; The Northern Liberties *v.* Swain, 1 Harris 113.

Judgment affirmed.