## Steele, Appellant, v. Walter.

*Mortgage—Foreclosure—Purchaser's rights—Lien—Contribution.*

When a purchaser at a sheriff's sale buys subject to the lien of a mortgage, he buys subject to the mortgage debt, and not simply subject to that portion of the debt which the mortgagor ought to pay in view of his relation with others. Having purchased subject to the mortgage, the purchaser cannot contest its validity.

A purchaser at sheriff's sale, subject to a mortgage, does not buy any

equity for contribution, which one of the mortgagors, who owns the land, may have against another who owns no title in the land, but has nevertheless, joined in the mortgage; he buys simply the equity of redemption, i. e., the right to retain the land by himself paying the mortgage debt.

Testator devised land to a son, charging the land with maintenance for a daughter. The son and his sister subsequently executed a mortgage to secure a debt of $3,000, of the son. The land was subsequently sold on a judgment confessed by the son and purchased at the sheriff's sale by S. for $1,600, subject to the mortgage and the charge of which S. had knowledge. Subsequently on foreclosure proceedings under the mortgage, S. paid the whole amount due on the mortgage to the mortgagee, and the mortgagee satisfied the mortgage of record. Thereafter S. filed a bill in equity praying that the satisfaction of the mortgage be stricken off, and that S. be subrogated to the rights of the mortgagee, and that the proceedings under the mortgage should be marked for her use, to enable her to use it as a defense against the charge created by the will of the testator. *Held*, that the bill was properly dismissed, inasmuch as S. purchased the land subject to the charge of which she had both constructive and actual notice.

Argued Oct. 14, 1902. Appeal, No. 73, Oct. T., 1902, by defendant, from decree of C. P. Westmoreland Co., No. 390, Equity Docket, dismissing bill in equity in case of Mary C. Steele v. Lucinda H. Walter, B. F. Walter and Anna B. Friedline. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Bill in equity to strike off satisfaction of a mortgage, and to have foreclosure proceedings marked to use of complainant.

McConnell, J., filed the following findings of fact and conclusions of law:

1. John Walter, in his lifetime, was the owner of a farm of 100 acres in Washington township, Westmoreland county.

2. After his death his last will and testament was admitted to probate, which contained the following provisions, viz: " Know all men by these presents, that I, John Walter, of Washington township, county of Westmoreland and State of Pennsylvania, do make this my last will and testament. I hereby give to my son, B. F. Walter and his heirs, all my estate, real, personal and mixed, and to whatever I shall be entitled at my decease by note, book account, or in any other way, upon the following conditions, viz : It is my will that the said B. F. Walter, and his heirs, pay all my just debts and my funeral ex-

penses, also pay to my son, J. C. Walter, the sum of fifty ($50) dollars, if he call in person for it; to my granddaughter Mary C. Zimmerman, now married to A. J. Steele, the sum of six hundred ($600.00) dollars; to my daughter, Lucinda H. Walter, the sum of one thousand ($1,000.00) dollars; and, further, the Lucinda H. to have her living in the old homestead so long as she remains unmarried, and does not charge wages for services rendered."

3. The complainant in this bill is the Mary C. Zimmerman mentioned in the will, and the Lucinda H. Walter named as one of the defendants in the bill, is the Lucinda H. Walter mentioned in the last clause of the foregoing will.

4. B. F. Walter accepted the devise of the land, as above set forth.

5. Afterwards, to wit: on September 29, 1894, B. F. Walter and wife, and the aforesaid Lucinda H. Walter, executed a mortgage of the real estate devised to B. F. Walter, in favor of Anna B. Friedline for the penal sum of $6,000, conditioned for the payment of $3,000, as therein set forth. This mortgage was acknowledged by the mortgagors on October 1, 1894, and recorded October 3, 1894.

6. Afterwards B. F. Walter became indebted to sundry other creditors, who, by virtue of warrants of attorney attached to certain writings obligatory executed by him, caused judgments to be entered against him which became liens on the aforesaid land, of later dates, however, than the lien of the mortgage above recited; executions were issued on two of these judgments and the land aforesaid was, by virtue of said executions, levied on and sold by the sheriff, to Mary C. Steele, the complainant, for the sum of $1,600. A deed for the property, duly executed and acknowledged by the sheriff, was delivered to the purchaser, who took possession of the property and still retains it.

7. At the time of the sheriff's sale, Mary C. Steele was familiar with the provisions of John Walter's will, and she, prior to that, caused it to be understood by the said B. F. and Lucinda H. Walter, that the provisions of the will with respect to Lucinda H. Walter having her living in the old homestead so long as she remained unmarried, and did not charge for her services, was to be carried out by her if she became the

purchaser, notwithstanding the sheriff's sale. She also understood that the sale would be subject to the Friedline mortgage of $3,000. She became the purchaser on May 18, 1895.

8. Shortly before June 15, 1895, Anna B. Friedline caused a writ of sci. fa. to be issued on the aforesaid mortgage, for the purpose of foreclosing it. The complainant, then and now living in the state of Ohio, learning of the proceeding, sent to her attorneys in Greensburg the amount then due on the mortgage, viz: $3,289.78, for the purpose of lifting the mortgage. On receiving this sum of money from the hands of the attorneys of complainant, Anna B. Friedline entered satisfaction on the margin of the record of the mortgage in the following form:

" Now, June 15, 1895, I, the mortgagee, herein named, do hereby acknowledge to have received satisfaction in full of the debt, interest and cost of this mortgage.

" Witness my hand and seal.

" ANNA B. FRIEDLINE. [Seal]

" Acknowledged before me.

" J. H. GALLAGHER, Deputy Recorder."

There was no mistake of fact which prompted the entry of this satisfaction, and the thing done was in accordance with the interest of the parties concerned in the transaction.

9. After this was done, to wit: on December 16, 1895, the aforesaid Lucinda H. Walter presented her petition in the orphans' court of Westmoreland county, setting forth the bequest made her under the terms of her father's will, the death of her father, on July 4, 1884, the sale of the farm by the sheriff on May 18, 1895, to the complainant, and her refusal to render to said petitioner her living and maintenance in said property.

The petition was so proceeded on that, on January 7, 1901, the Supreme Court, affirming the report of the auditor, held that the clause giving to Lucinda H. Walter her living in the old homestead so long as she remained unmarried and did not charge wages for services rendered, constituted a lien on said land, and that it was of such a nature that it was not divested by the sheriff's sale. The opinion of the court is to be found in Walters's Estate, 197 Pa. 555.

10. At the time of the purchase of the land at the sheriff's

sale, and at the time of the entry of satisfaction on the Friedline mortgage, Mary C. Steele was cognizant of the facts from which the legal conclusion is deducible that the provisions of the will of John Walter giving to Lucinda H. Walter her living in the old homestead, is a lien on the said land and not divestible by the sheriff's sale. She, however, entertained a mistaken view of the law arising out of those known facts.

## CONCLUSIONS OF LAW.

From the foregoing facts the following conclusions of law are deduced:

1. The title acquired by Mary C. Steele at the sheriff's sale of the real estate of B. F. Walter, was subject to the mortgage of Anna B. Friedline, and also subject to the testamentary provision whereby Lucinda H. Walter was afforded a living in the real estate then sold.

2. Having bought subject to both these charges, the land became—as between her and the mortgagors—the primary fund for their payment, and she is, in law, considered as being agreed that they should be paid by her, as a part of her bid for the property at the sheriff's sale.

3. While this agreement is not binding on her personally, yet as long as she holds the purchased real estate, she has no claim on anyone else, for the payment of these charges, which she herself had promised to discharge, and had been paid in full for so promising, by getting the title to the land.

4. When she paid off the Friedline mortgage, she is presumed to have done it as the consummation of her agreement to pay for the land, and is not to be considered as a purchaser of that security. Having only done what the obligation of her understanding at the sheriff's sale bound her to do, she gets no legal or equitable rights by such payment, in addition to what accrued to her at that sheriff's sale. She, therefore, would have no right to have the mortgage assigned to her, and has no equity which would entitle her to be subrogated to the mortgage for the purpose of enforcing it against anyone else. Payment was extinguishment.

5. When a purchaser at a sheriff's sale buys subject to the lien of a mortgage, she buys subject to the mortgage debt, and not simply subject to that portion of the debt which the mort-

gagor ought to pay in view of his relations with others. Having purchased, subject to the mortgage, the purchaser cannot contest its validity.

6. A mistake of law will not constitute a ground of relief in equity.

7. A purchaser at sheriff's sale, subject to a mortgage, does not buy any equity for contribution, which one of the mortgagors, who owns the land, may have against another who owns no title in the land, but has, nevertheless, joined in the mortgage, she buys simply the equity of redemption, i. e., the right to retain the land by herself paying the mortgage debt.

8. It is immaterial to Mary C. Steele whether Lucinda H. Walter, joining with B. F. Walter in the Friedline mortgage, had the effect of postponing the lien of the prior legacy to that of the mortgage. Her purchase was subject to both liens and she never owned, or was entitled to own, either of them. Her only interest in these liens is not with respect to their priority —the one over the other—but is through her obligation to pay them, to the end that she may thereby fully discharge her bid at the sheriff's sale.

9. No fraud, accident or mistake having brought about the satisfaction on the mortgage—but, on the contrary, it having been done in accordance with the intent of the parties concerned and in consummation of their legal obligations, there is no ground for canceling the entry of satisfaction.

10. Complainant's rights are such, and such only, as have accrued to her by her purchase of the lands at sheriff's sale, and her continued ownership of them. That land, and the title thereto, have suffered no diminutiom since the sale, nor have the terms of her tenure thereof been made any more onerous to her by reason of anything that has transpired since the sale. The full consummation of the terms of purchase demands that she pay the legacy to Lucinda H. Walter. There is, therefore, no equity in complainant's case which requires the court to assist her in avoiding the performance of that duty, voluntarily assumed by her when she purchased the land.

11. No equity having been shown, adequate to justify the decree asked for, the bill should be dismissed at the complainant's costs.

The court dismissed the bill.

*Error assigned* was decree dismissing the bill.

*Paul H. Gaither,* with him *J. R. Spiegel, M. N. McGeary* and *Cyrus E. Woods,* for appellant.—Lucinda pledged and postponed her lien charge on this land to secure the payment of her debt for $1,500 to Friedline. Mrs. Steele paid her debt, and there is no reason why she should not be subrogated to the right and remedy of B. F. Walter, to insist that Lucinda's lien charge upon the land shall pay her part of the debt.

Mrs. Steele by her purchase of the estate of the remainderman, at sheriff's sale, subject to the mortgage, under the act of 1830, stands subrogated to his entire equity of redemption, with the attendant right to insist that the life tenant shall pay and discharge her part of the joint mortgage debt for the relief and assurance of her estate in remainder; and it follows that upon payment by her of the whole debt in the preservation of her ascertained rights, she is entitled to have the mortgage marked to her use, to the end that her equity of subrogation may be made effectual against the estate for life of her comortgagor: Miller's App., 119 Pa. 620.

*G. B. Shaw,* with him *D. S. Atkinson* and *W. C. Peoples,* for appellees.—Regardless of any testimony in the case, there is an implied agreement that when the appellant purchased the land subject to mortgage and the legacy, she agreed to pay them both: Carpenter v. Koons, 20 Pa. 222; Dollar Savings Bank v. Burns, 87 Pa. 491; Cooley's App., 1 Grant, 401; Bryar's App., 111 Pa. 81.

OPINION BY MR. JUSTICE BROWN, January 5, 1903:

John Walter devised a farm to his son, B. F. Walter, one of the appellees, directing that he pay certain legacies, and that a daughter, Lucinda H., another of the defendants below, should " have her living in the old homestead so long as she remains unmarried and does not charge wages for services rendered." The old homestead was the farm devised to the son. This provision for the support of the daughter we held to be a charge on the land : Walters's Estate, 197 Pa. 555. The son accepted the devise and subsequently, on December 29, 1894, in conjunction with his sister Lucinda, executed a mort-

gage on the farm to Anna B. Friedline, to secure the payment of $3,000. Shortly afterwards, having become financially involved, he confessed judgments to certain creditors, upon two of which executions were issued, and, on May 18, 1895, the farm was sold by the sheriff and purchased by Mary C. Steele, the appellant, for $1,600, subject to the Friedline mortgage. The provision in favor of the daughter not being determinate, the sale was subject to it, also, as a charge on the land: Walters's estate, supra; and the lien of the mortgage having been prior to all other liens except this fixed charge not divested by the sale, it was not divested by the sale on the subsequent judgment: Helfrich v. Weaver, 61 Pa. 385; Wertz's Appeal, 65 Pa. 306.

Anna B. Friedline having instituted proceedings for the collection of her mortgage, the appellant, being the then owner of the farm, on June 15, 1895, paid her the amount due thereon—$3,289.78—and, on the same day, the mortgagee satisfied it of record. After we had decided that the provision made by John Walter in favor of his daughter Lucinda was a charge on the land, and had not been discharged by the sheriff's sale on the executions issued against the son, the appellant filed her bill, asking for a decree annulling and taking off the satisfaction of the mortgage by Anna B. Friedline, that she be subrogated to all the latter's rights thereunder, so far as it related to the charge of the said Lucinda H. Walter, and that it be marked for her use, to enable her to enforce it "as an assurance to her title, or as a set-off and defense against the claim of the said Lucinda H. Walter," secured to her by the will of her father. The bill was dismissed in an elaborate and well considered opinion by the court below.

When B. F. Walter and his sister Lucinda executed the mortgage, he was the owner of the property. The fee was in him, her interest being only an undeterminate legacy charged on the land. What the purpose of the mortgagee was in having the sister join in the mortgage does not appear, though it may be assumed she did so that, as between her and the mortgagee, the latter's lien might be regarded as first. It does not appear that the mortgage was given for any debt of Lucinda H. Walter; but we do not deem this material in determining the question before us, which simply is, whether the property

purchased by this appellant should cost her what the law fixed as the price for it under her bid. "It is immaterial to Mary C. Steele," as the court below properly concluded, "whether Lucinda H. Walter, joining with B. F. Walter in the Friedline mortgage, had the effect of postponing the lien of the prior legacy to that of the mortgage. Her purchase was subject to both liens and she never owned, or was entitled to own, either of them. Her only interest in these liens is not with respect to their priority—the one over the other—but is through her obligation to pay them, to the end that she may thereby fully discharge her bid at the sheriff's sale."

When the land was sold by the sheriff, no interest of Lucinda H. Walter was affected. It was only the interest of the brother that passed to the purchaser, and that interest was simply his equity of redemption. The sale was a judicial one, and the law fixed its terms. They were, that the purchaser should pay her bid of $1,600, when title would be made to her for the land, subject to the charge and lien that had not been disturbed by the sale. She incurred no personal liability beyond the payment of $1,600; but she knew, or was bound to know, that whatever charges or liens were not divested by the sale would be part of the purchase money not enforceable against her personally, but against the land, subject to which she bought it. To enjoy not only what she purchased—the equity of redemption of B. F. Walter—but the absolute estate in the land, she must pay the fixed incumbrances upon it. She is not bound to do so; but, unless she does, the holders of them can take the property from her by enforcing from it payment of what is due. These incumbrances were imposed upon the farm by former owners, and, so incumbered, it was sold by legal process away from the one who had mortgaged it, and purchased by one who ought not to have, and, therefore, does not have, any legal or moral right to question their payment, or to ask that the land which she purchased, so burdened, shall be relieved from incumbrances which she did not place upon it, but which, on the contrary, she and other bidders at the public judicial sale knew, or were bound to know, would bind the property offered for sale, in addition to the price to be bid for it. It is none of her concern how or why this charge and this mortgage lien were created, and it is not, therefore, for her to say that either of

them shall be paid in whole or in part by B. F. Walter or Lucinda H. Walter. It is sufficient that she knew, when she was bidding on the property at the sheriff's sale, that both the charge and the mortgage would be enforced against the land, and that, in addition to her express bid of $1,600, there was her implied agreement that the farm should be bound by them as part of the unpaid purchase money. She so acquired the title to the land, and she cannot ask that anyone else should pay for it. She does not propose to pay back to B. F. Walter, or to his creditors, whatever she may save on the price that she bid and agreed to pay for the property, if the relief that she asks for should be given to her. All bidders at the sheriff's sale understood, or, in law, are presumed to have understood, that, in addition to the price to be paid to the sheriff for his conveyance of the equity of redemption of the defendant in the executions, the balance of the unpaid purchase money would be this charge and this mortgage, and the farm might have been knocked off to the bidder next lower to the plaintiff without thought by him of ultimately getting the property for less than his bid. We adopt as correct views, applicable to the facts in this case, the fifth and seventh legal conclusions of the court below, which are :

" 5. When a purchaser at a sheriff's sale buys subject to the lien of a mortgage, she [he] buys subject to the mortgage debt, and not simply subject to that portion of the debt which the mortgagor ought to pay in view of his relation with others. Having purchased, subject to the mortgage, the purchaser cannot contest its validity."

" 7. A purchaser at sheriff's sale, subject to a mortgage, does not buy any equity for contribution, which one of the mortgagors, who owns the land, may have against another who owns no title in the land, but has, nevertheless, joined in the mortgage, she [he] buys simply the equity of redemption, i. e., the right to retain the land by herself paying the mortgage debt."

In support of the foregoing views, there are several decisions of this court, rendered prior to the passage of the act of May 19, 1893, which, however, does not differ from the act of April 6, 1830, in preserving the lien of a first mortgage on property sold at a sheriff's sale in a case like the one now before us. " The act of 1830 provides that if the oldest lien be a mortgage, and the land be sold on a judgment, the sheriff's vendee shall take it

subject to the mortgage.   When the defendant made his purchase, therefore, he had manifestly no claim either on the mortgagor or on anybody else to pay off the whole mortgage and relieve him entirely from what was probably the most burdensome part of his contract.   His share of the mortgage formed a part of the price he agreed to pay for the land.   The statute of 1830 entered into and made one of the elements of his contract :" Carpenter v. Koons, 20 Pa. 222.   The question before the court in Hansell v. Lutz, 20 Pa. 284, was, whether, when land was purchased at a sheriff s sale subject to a mortgage that was not divested, the bond accompanying the mortgage or the mortgage represented the primary fund for the paying of the debt.   The court said in determining the question : " The land was sold by the sheriff charged with the payment of the mortgage.   How would this be usually and naturally understood ?   Unquestionably that the purchaser shall discharge the mortgage, and not that he will do it if the mortgagor should fail to pay his bond, On this account the land always sells for at least the measure of the mortgage debt less than its value.   And it is better for both mortgagor and purchaser to sell it so, than that either should have to abide the consequences of a calculation of the chances as to the future ability of the mortgagor to pay the debt. Hence it follows that the purchaser, in thus buying the land, undertakes the duty of paying the mortgage, not personally, but so far as the land is sufficient for that purpose.   Then thus far he assumes the duty of relieving the obligor, and, as between them, the land becomes the primary fund for the payment of the debt.   It follows, also, that, if the obligor pay the debt, he may claim subrogation to the mortgage, else the purchaser would unjustly hold the land without having paid the entire consideration.   Thus the interest of the mortgagor and mortgagee in this action appears to be identical."   In Dollar Savings Bank v. Burns, 87 Pa. 491, McClurkan first purchased property, sold on execution upon a judgment, subject to a mortgage.   Subsequently the bank, the mortgagee, instituted proceedings on its mortgage, obtained judgment and issued a levari facias.   Before sale, however, McClurkan paid the amount due the bank and took from it an assignment to himself of the bond and mortgage.   Then, on the levari facias already in the sheriff's hands, the property was offered for sale and bid off by McClurkan for

less than the amount of the mortgage. He became the purchaser of the property the second time, when sold on the levari facias for a sum less than the mortgage. He subsequently attempted to recover from the mortgagor on the accompanying bond the difference between what the property had been sold for on the levari facias and the amount named in the bond, and, in denying his right to do so, we held: "When McClurkan bid off the property at the sale, on his own judgment, he bid subject to the mortgage of the bank, and what he acquired by the sheriff's deed was Burns's equity of redemption. The mortgage, by the act of 1830, being a charge upon the land, the bid of the plaintiff, on the sale on the subsequent judgment, necessarily included this charge, and it became part of that bid. It is, therefore, obvious that as long as McClurkan chose to retain the premises he had acquired at the official sale, he could, by no process, direct or indirect, compel Burns to pay any part of the mortgage debt, for that he had agreed to do himself. But more than this, had Burns been compelled to pay this debt, he would have been entitled to subrogation to the rights of the bank in the mortgage: Hansell v. Lutz, 20 Pa. 284. And why this? Answer, in order that he might be enabled to enforce the mortgage against the land, which was the primary fund for its payment, otherwise the purchaser would unjustly escape the payment of the full amount of his bid. When, therefore, McClurkan paid the bank, he only did what he had agreed to do by his bid; the payment was in relief of his own land, and hence the assignment was fruitless. Suppose, upon payment, the bank had refused to assign, could the plaintiff have gone into court and compelled a subrogation? Certainly not, for that was a right which the mortgagor would have had, had he paid the bank, and that in order that he might enforce it against the purchaser at the sale, on the subsequent lien; how then can this purchaser claim the right to enforce a debt against the mortgagor which the mortgagor could have compelled him to pay? If, however, he was not at law entitled to subrogation, then the assignment could give him no right as against the mortgagor, for it was, after all, but subrogation by the voluntary act of the bank. Whatever equity he had arose from the payment of the mortgage, and as that act gave him no equity as against Burns, the transfer by the mortgagee did not better his condition. And

in this there is no hardship put upon McClurkan; he was not obliged to pay the mortgage; he was not personally bound by it; he might have abandoned his position as owner of the equity, and might have allowed the bank to proceed upon its mortgage and sell the premises.   He then could have bought in the property for any price at which the bank might choose to let it be knocked down, but in that case, to be sure, he would have had to bid against the bank, and it is not probable he would in that event have obtained the premises for the paltry sum of $300, the amount for which they were sold, to himself, after he had obtained the control of the writ.   He did not, however, see fit to adopt this course; he' chose rather to stand in Burns's right to retain possession of the property and exercise his privileges as owner of the equity of redemption, and, having thus made his choice, he cannot now be permitted to abandon that choice, clothe himself with the powers of the mortgagee and pursue the mortgagor for money which he of right ought to pay and did pay to disincumber his own property." As was said in Cooley's Appeal, 1 Grant, 401, in paying off the mortgage, the appellant did nothing more than her duty.

The only reason given by the appellant why the relief asked for should be granted is, that, at the time she purchased the land and when she paid off the Friedline mortgage, " she had no knowledge, or intimation, or suspicion, that the said defendant, Lucinda H. Walter, had any claim or incumbrance upon said homestead farm, as a matter of law, to secure her maintenance and living."   The answer to this is, that she purchased at a judicial sale, and the rule for her guidance was caveat emptor.   The tenth finding of fact by the court is: " At the time of the purchase of the land at the sheriff's sale, and at the time of the entry of satisfaction on the Friedline mortgage, Mary C. Steele was cognizant of the facts from which the legal conclusion is deducible that the provisions of the will of John Walter giving to Lucinda H. Walter her living in the old homestead, is a lien on the said land and not divestible by the sheriff's sale.   She, however, entertained a mistaken view of the law arising out of those known facts."   The will of her grandfather was on record, and she knew, or is conclusively presumed to have known, what ultimately the courts might declare to be the meaning and effect of the terms for the provi-

sion of his daughter Lucinda. They had the same meaning and effect in 1894, when the will was admitted to probate, as they had in 1900, when we passed upon it.

But there are equitable reasons why the bill should have been dismissed. The seventh finding of fact is: " At the time of the sheriff's sale, Mary C. Steele was familiar with the provisions of John Walter's will, and she, prior to that, caused it to be understood by the said B. F. and Lucinda H. Walter, that the provisions of the will with respect to Lucinda H. Walter having her living in the old homestead so long as she remained unmarried and did not charge for her services, was to be carried out by her if she became the purchaser, notwithstanding the sheriff's sale. · She also understood that the sale would be subject to the Friedline mortgage of $3,000. She became the purchaser on May 18, 1895. " Having so herself agreed that she would carry out the provisions of the will of her grandfather as the purchaser at the sheriff's sale of the farm, she ought not, in equity and good conscience, now to be heard in her prayer for relief from so doing.

Decree affirmed and appeal dismissed at appellant's costs.