Lipkin *v.* Bernstein et al., Appellants.

Argued October 15, 1928.

Before Porter, P. J., Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.

*Samuel Englander,* and with him *B. D. Oliensis,* for appellants.—Payment of the first and second mortgages entitle defendant to subrogation to the rights of the mortgagees in stock held as collateral security for the mortgages: Campbell v. Shrum, 3 Watts 60; Old Colony Trust Co. v. Transit Co., 192 Pa. 596; O'Donnell v. Neely, 66 Pa. Superior Ct. 351.

*Henry B. Sachs,* of *Sachs & Sachs,* for appellee.— The payment of the mortgage for which the stock was assigned as collateral security created absolute ownership in the last assignee of the stock: May's Estate, 218 Pa. 68; Burke v. Gummey, 47 Pa. 518.

OPINION BY TREXLER, J., January 25, 1929:

This was a proceeding in equity to determine the ownership of sixty shares of stock of the Mortgage Building & Loan Association. Prior to December 31, 1924, Willig was the owner of a property, subject to two mortgages; the first of $20,000 held by the McCurdy Estate and the second for $10,000 held by the Mortgage B. & L. Association. The second mortgage was created by Willig and contained the usual provisions for the payment of dues, etc., and for the production of receipts for taxes and water rents and both mortgages were accompanied by the usual bonds and warrants of attorney.

In connection with the giving of the second mortgage, Willig assigned to the B. & L. Association, sixty shares of its capital stock as collateral security for the payment of the mortgage and the performance of the obligations contained therein.

On December 31, 1924, Willig sold the property subject to the above mortgages to Yetta Bernstein, who took title for herself and her husband, Benjamin.

They joined in a third mortgage to Willig for $9,000 with the usual provisions as to receipts for interest on prior encumbrances and for taxes and water rents and with it was the usual bond and warrant of attorney. At the same time as the deed was given to Yetta Bernstein, Mr. Willig assigned to her his equity in the sixty shares of capital stock held by the building association as collateral security for the two mortgages and she immediately reassigned the same to Kratzok, Willig's nominee as collateral security for the third mortgage; thus Yetta Bernstein was the owner and Kratzok the pledgee subject to prior rights.

The Bernsteins conveyed the property to Samuel Lipkin, subject to the three mortgages and at the same time Yetta Bernstein assigned in blank her equity in or ownership of the sixty shares of the capital stock of the B. & L. Association, subject to the prior assignments to the association and to Kratzok and the name of Dora Lipkin, the plaintiff in the bill in equity, was thereafter inserted in the assignment. Samuel Lipkin went into possession and collected the income from the property, but failed to meet the obligations put upon him by the mortgages and Willig, the owner of the third mortgage, entered judgment upon his bond against Benjamin and Yetta Bernstein, the parties who had given the third mortgage and had the damages assessed at $9,588 and issued a writ of fi. fa., upon which the sheriff was about to sell the mortgaged property and certain other properties owned by the Bernsteins. The Bernsteins, desirous of preventing the sale of their other property, requested Lipkin to pay off the judgment, but he refused and as a next resort, they entered into an arrangement with Willig, the plaintiff in the execution, whereby he agreed that he would proceed with the sale of the property covered by his mortgage provided the Bernsteins would bid it up to $10,650 which was considered approximately sufficient to cover the judgment

and costs and other items. It was also agreed that if this was done, he, Willig, would assign to them his interest in the sixty shares of the capital stock of the B. & L. Association held as collateral security for the mortgage by his nominee, Kratzok.

The sheriff's sale took place. Nobody bid and the property was about to be struck down to the plaintiff in the writ for a nominal sum when the Bernsteins in accordance with the arrangement with Willig, put in a bid for $10,650 which they duly paid and took the conveyance of the property and Willig's mortgage was paid except $147.22 which sum does not figure in the present contention, for the court has provided for its payment in the decree.

Shortly after the sale, the Bernsteins discovered that Lipkin had failed to meet the obligations which accrued on the first and second mortgages, that the interest and water rents remained unpaid and both the first and second mortgages were about to be foreclosed and they were put to the necessity of paying off those mortgages and thus sustained a substantial loss in refinancing the property. The claim of the Bernsteins is that Lipkin was primarily liable for the arrearages of interest and other charges and the Bernsteins having been compelled to pay off the mortgages and the taxes and arrearages which accrued under them, they became subrogated to the rights of Willig and the B. & L. Association, the mortgagees, with respect to the sixty shares of stock held them as collateral security.

When the plaintiff, Mrs. Lipkin, acquired the sixty shares of the B. & L. Association stock, there were only two impediments to her full ownership of the shares and those were the two prior assignments, both of which were mere transfers in pledge. When these mortgages were paid off, the assignments lost their force and affect and Dora Lipkin's ownership of the stock became absolute. The claim of the owner of the

third mortgage, as we have already noted, has been provided for. He disclaims any right to the stock except to the amount of $147.22. Mrs. Lipkin was not a party to the agreement between Willig and the Bernsteins. When they bought the property at the sheriff's sale, Willig's mortgage was cancelled by payment except as hereinbefore noted. When the Bernsteins paid off the building association mortgage, that act released the claim which the association had on the sixty shares. When they paid the mortgages, they, as owners did what they had impliedly agreed to do when they bought the property. Dollar Savings Bank v. Burns, 87 Pa. 491; Young v. Brady, 250 Pa. 578; Cooley's Appeal, 1 Grant 401. The purchase of the property necessarily included the encumbrances. Whatever may have been the peculiar situation in this case which forced the Bernsteins to repurchase it, when they bought it, the encumbrances on it formed part of the bid and the bid was correspondingly less because of the encumbrances. All bidders at sheriff's sale understand, or, in law, are presumed to understand, that, in addition to the price to be paid to the sheriff for his conveyance of the equity of redemption of the defendant in the executions, the balance of the unpaid purchase money is the mortgage on the property: Steele v. Walter, 204 Pa. 257, 266. The purchaser simply buys the equity of redemption, that is, the right to retain the land by paying the mortgage debt, and his bid is for such sum as he is willing to pay for the property above the mortgage debt: Greensburg Fuel Co. v. Gas Co., 162 Pa. 78.

In buying the property at sheriff's sale and accepting the conveyance, the Bernsteins made the debts on it their own. The ultimate liability rested on them. This being so, no payment by them on the mortgage could give rise to the equity calling for subrogation, for its payment was all their own debt for which they

were ultimately liable: Lackawanna Trust & Safe Deposit Co. v. Gomeringer, 236 Pa. 179, 189.

If the Bernsteins paid their own debt when they settled with Willig for the third mortgage, they cannot by any theory of subrogation obtain any contribution from anyone else and when the principal debt was paid, Willig's interest in the collateral ceased, he not being the owner of it, but merely a pledgee. The same is true of the building association. Of course, where the lien of mortgage is discharged by the sheriff's sale, a different rule applied: Mollenauer v. Smith, 51 Pa. Superior Ct. 517, 523.

The decree of the lower court is affirmed. The appellants to pay the costs.