Fair and Square Building and Loan Association, Appellant, *v.* Trustees Presbyterian Board of Publication and Sabbath School Work et al.

Argued October 17, 1929.

410

Before Porter, P. J., Trexler, Keller, Gawthrop, Cunningham and Baldrige, JJ.

*Aaron Trasoff*, for appellant.—The payment of the $2,000 was a payment on account of the first mortgage: Loverin Hall & Company v. Humboldt Safe Deposit Company, 113 Pa. 6.

*Earl G. Harrison*, and with him *Saul, Ewing, Remick & Saul*, for appellee, cited: Moore v. Harrisburg Bank, 8 Watts 138; Moats v. Thompson, 283 Pa. 313; Anderson v. Neff, 11 Sergeant & Rawle 208; McCartney v. Kipp, 171 Pa. 644; Blair v. Mathiott, Adm., 46 Pa. 262; Downey v. Tharp, 63 Pa. 322.

Opinion by Keller, J., February 28, 1930:

This is a contest between the assignees of a first mortgage and the second mortgagee, which became the owner of the real estate by purchase at sheriff's sale on foreclosure of its mortgage, as to the amount of the

principal due and payable on said first mortgage. The proceeding was a bill in equity to compel the assignees of said first mortgage to note on the margin of the record of the mortgage a payment of $2,000, reducing the principal thereof to $10,000.

Markellos, the owner of premises No. 2012 Green St., Philadelphia, on November 25, 1922, gave Dallam a bond and first mortgage for $12,000; and on June 12, 1924, gave the plaintiff, Fair and Square Building and Loan Association, a bond and second mortgage for $6,500.

Some time after the first mortgage was due, Dallam told Dorman, Markellos' attorney, who had secured the mortgage for him, that he wanted the mortgage paid, as he had use for the money. Dorman asked him if he would assign the mortgage to somebody else and he said he would. Nothing was done and Dallam again asked for the money. Dorman said to him, "I want you to assign that mortgage to somebody else, but if you want a little money now I have not been able to place that mortgage." To which Dallam replied: "All right, pay me a couple of thousand dollars and I will hold it and assign the mortgage to him." Pursuant to this, Markellos, the mortgagor, gave Dorman $2,000 who, on September 27, 1926, paid it at Dallam's office. The next day Dallam wrote Dorman the following letter: "I was very pleased to day to be advised that you sent to this office yesterday a check for $2,000 and I want this letter to be an original receipt for the same, and when received return me the slip which the office gave you yesterday. This amount of $2,000 is taken by me on account of a bond of Antonios Markellos of $12,000 secured by a mortgage on 2012 Green Street, and with the understanding that at your earliest convenience you propose to pay me the balance of that amount of $10,000 and that I will make you an assignment of that mortgage at any time say within six months that you request the same."

Dorman subsequently, in January, 1927, got the defendants, Trustees of the Presbyterian Board of Publication and Sabbath School Work, to take an assignment of the mortgage. They paid $12,000 to the Trust Company, which was attending to the settlement for them, and received an assignment of the bond and mortgage, and a declaration of no set off from Markellos, setting forth that the principal sum of $12,000 was due and payable on said mortgage and that he had no defense thereto. The trust company distributed the fund by giving Dallam $10,106.67, including interest, paying taxes, water rent and expenses chargeable against Markellos in the sum of $677.60, and a check to Dorman, as attorney for Markellos, for $1,215.73. In other words, the trust company distributed $10,000 of the principal sum so received to Dallam and $2,000 to Markellos, the mortgagor.

From the foregoing, which is undisputed, the following facts must be accepted as established: (1) The $2,000 received by Dallam on September 27, 1926, was paid by Markellos, the mortgagor, out of his own funds. (2) At the time of such payment Markellos (or Dorman acting for him) had not procured a purchaser of the first mortgage willing to take an assignment of it. In making the payment Markellos was not advancing the money on behalf of any definite and ascertained person but himself; he could not have been advancing the payment on behalf of a future assignee, who did not agree to purchase the mortgage until three or four months later.

Markellos defaulted in his payments to the plaintiff building and loan association and in December, 1927, it started foreclosure proceedings, under which it became the purchaser of the said real estate at sheriff's sale and received a sheriff's deed for the premises.

The plaintiff contends that the $2,000 paid by Markellos, the mortgagor, to Dallam, the mortgagee, must be regarded as a payment on account of the mortgage,

reducing the principal of the mortgage, subject to which the real estate was sold at sheriff's sale, to $10,000.

The learned court below found that the "money was given merely as an advance on account of the purchase money to be paid by a bona fide purchaser of the mortgage," to be obtained by Markellos, through his agent Dorman as soon thereafter as possible.

The question of payment is not one purely of fact; it is a mixed question of fact and law; and if it must be ruled as matter of law that any payment made by the mortgagor, out of his own funds, to the mortgagee to be applied to the mortgage and bond, or either of them, must be regarded as respects a subsequent mortgage creditor, as a payment and extinguishment pro tanto of the mortgage, then it is immaterial whether a contrary conclusion be called a finding of fact or a conclusion of law. It cannot stand.

There is no doubt that the parties were seeking some method by which to escape the legal consequences of a payment by Markellos to Dallam. Whether the means adopted were sufficient for the purpose is the question for decision. Calling it an advancement, if in legal effect it was a payment, would not avoid the consequences of a payment.

It must be admitted that if Dorman, out of his funds, had advanced the $2,000 payment to Dallam, there would have been no payment or extinguishment on the mortgage; or if these defendants had agreed to take an assignment of the mortgage, but before they were ready to furnish the money Dallam had become insistent on getting some funds, and *Markellos had advanced to the defendants* $2,000, which *they* turned over to Dallam on account of the assignment, then there would have been no payment by Markellos on account of the mortgage, and at the time of settlement defendants could safely have refunded him the advancement, because when the advance was made they

were not the mortgagee, or holder of the mortgage. But a mortgagor cannot make an advancement, as distinguished from a payment, to a mortgagee on account of a non-existing assignee of the mortgage whom he has not yet secured. The payment cannot remain suspended, like Mahomet's coffin, until he finds some one willing to take an assignment of the mortgage. It must have some legal effect as soon as made. Can anyone doubt that if a purchaser of the mortgage could not be found, and the mortgage had been foreclosed, Dallam would have been limited to a recovery of $10,-000 principal; and that without one further word between the parties, the law would have applied the $2,000 in reduction of the mortgage debt?

If Markellos could not make an "advancement" for some one not yet obtained to purchase and take over the mortgage as assignee, then, if regarded as an advancement on the assignment of the mortgage, it must have been on his own account and in contemplation of the assignment of the mortgage to himself or to his nominee; but as we shall hereafter see, such an arrangement necessarily results, as respects a subsequent mortgage creditor, in the payment and satisfaction pro tanto, of the mortgage. While, when one buys real estate subject to a mortgage—that is, becomes a terre tenant—, and afterwards buys the mortgage, it is a matter of intention whether there shall be a merger, (Moore v. Harrisburg Bank, 8 Watts 138; Duncan v. Drury, 9 Pa. 332; Continental T. & T. Co. v. Devlin, 209 Pa. 380), this does not apply where the *mortgagor* himself pays the mortgage debt with his own funds. In such case intention does not enter into it; the debt is paid, satisfied and extinguished; and though as between the parties themselves the mortgage security may be kept alive to cover future advances, (Peirce v. Black, 105 Pa. 342), as respects a subsequent mortgage or judgment creditor it must be regarded as satisfied: Girard Trust Co. v. Baird, 212 Pa. 41, 44. "There is

no perceivable difference between the revival of a satisfied mortgage and the creation of a new mortgage'': Kinley v. Hill, 4 W. & S. 426, 433.

At the time, the parties may have thought that the payment could be accepted on account of the bond, without affecting the mortgage, provided it was not endorsed on the bond; for Dallam's letter, carefully prepared at the time, to effectuate the arrangement with Dorman, and acquiesced in by the latter, reads, ''This amount of $2,000 is taken by me *on account of a bond* by Antonios Markellos of $12,000 secured by a mortgage on 2012 Green Street, and with the understanding that at your earliest convenience you propose to *pay me the balance of that amount of $10,000* and that I will make you an assignment,'' etc. But in Meigs v. Bunting, 141 Pa. 233, 239, our Supreme Court said: ''A bond and mortgage are distinct and separate securities, though for the same debt. As against the rights of third parties, payment in part of either extinguishes the debt and thereby satisfies the other.'' ''A mortgage is but a security for the payment of the debt and when that is paid or extinguished, it can never be resuscitated,'' as respects the rights of a subsequent lien creditor: Anderson v. Neff, 11 S. & R. 208. ''The debt being everything, and the mortgage barely a security for the payment of it, it follows of necessity, that whatever affects the debt, will produce a corresponding effect upon the mortgage. If the debt be extinguished by any means, the mortgage will thereby become so likewise'': Craft v. Webster, 4 Rawle 242, 256. This applies equally, whether the payment be in whole or in part.

The effect, as respects a later mortgage creditor, which the law gives to an actual payment by the mortgagor, out of his funds, to the mortgagee, for account of the mortgage or bond, irrespective of how the parties may try to cover it or avoid its legal consequences, was well stated in Loverin, Hall & Co. v. Humboldt Safe De-

posit & Trust Co., 113 Pa. 6. In that case Mrs. Rebecca Thompson, the owner of land in Erie County, joined with her husband in giving two mortgages, one in 1867 to Loverin, Hall & Co.; the other in 1871 to Humboldt Safe Deposit & Trust Co. In 1875 she and her husband conveyed the land to their three children for $8,000, "subject to subsisting liens." In 1879 Mrs. Thompson, who was a creditor of Conrad Brown's estate, made a written agreement with Brown's administrator by which the latter agreed, in consideration of the satisfaction of her claim against the estate, to purchase the first mortgage and have it assigned to Mrs. Thompson or some one for her use, and pursuant thereto the mortgage was purchased by Brown's administrator and assigned to Mrs. Thompson's attorney, Gunnison. A writ of scire facias was issued on the first mortgage, and judgment obtained, on which the land was sold to Gunnison for a sum not sufficient to pay both mortgages. The holder of the second mortgage, claiming that the first mortgage was paid and therefore not a lien on the land as respects the junior mortgage, asked for an issue to determine the validity of the lien, which was awarded, and on the trial a verdict was directed for the second mortgage creditor. The Supreme Court affirmed. It will be noted in that case that the payment was made by the mortgagor indirectly, through the Brown estate, and assignment of the mortgage made to a third person for her account, *after* she had conveyed away the real estate and was no longer the owner; yet the effect of the payment was to extinguish the debt, as respects the junior mortgage creditor. The Supreme Court said: "This is a very plain case. To state it briefly, it was an attempt to keep alive a mortgage which had been paid by the mortgagors, against a subsequent unpaid mortgage given by the same mortgagors upon the same premises. The evidence is uncontradicted that it was the money of Mr. and Mrs. Thompson (the mortgagors) that paid the

first mortgage. That the money actually came from Conrad Brown's estate is of no consequence. It was paid by said estate at the request of Mr. Thompson, with the understanding that such payment would settle a claim which Mr. and Mrs. Thompson held against the estate of Conrad Brown's father and mother. It was an indirect mode of doing it, but the result is the same. The money paid was in fact the money of the mortgagors. It is doubtless true that the mortgagors did not intend to have this mortgage satisfied. They may and probably did intend to keep it alive for the benefit of themselves or their children. We think the documentary evidence in the case shows this. Where creditors are not concerned, there is perhaps no legal reason why it may not be done. Though actual payment discharges a judgment or other incumbrance at law, it does not discharge it in equity if there are interests which require it to be kept alive for their protection. Thus it may be kept on foot for the protection of a paying surety, and other cases which it is not necessary to name ... .... This results from the right which every man has to do what he will with his own. The rule is different when he comes to deal with the property of other persons. The rights of the second mortgagees are concerned here. When the mortgagors procured the payment of the first mortgage with what was admittedly their own money, it extinguished that mortgage at law and in equity as between it and the second mortgage, and the latter took its place. We do not deny the right of the mortgagors to have procured some friend to have bought the mortgage and taken an assignment of it. Such a transaction would have been legal and would have kept it alive. But when they procured it to be done with their own money, the assignment of the mortgage is of no validity as against the younger mortgage. This principle is too familiar to need the citation of authority."

We think it must be held that the transaction between

Markellos' attorney and Dallam amounted, in legal effect, whatever name they attempted to give it, to a payment pro tanto on the mortgage, and if so, the case of Mitchell v. Coombs et al., 96 Pa. 430, where the facts were strikingly similar in many respects to this one, disposes of all the remaining arguments of the appellees. There Coombs gave the Titusville Savings Bank a mortgage, absolute on its face, for $1,000, securing a bond of like amount. The mortgage was a first lien on Coombs' real estate. The bond was paid when due, but the mortgage was retained as security for further discounts. Later, Guthrie obtained two judgments against Coombs, and the latter afterwards gave a second mortgage to Roberts. Sometime after the bond, to secure which the first mortgage was given, had been paid, Coombs arranged with Mitchell, president of the Producers & Manufacturers Bank, to take over his notes to the savings bank, with an assignment of the bond and mortgage, giving a declaration to Mitchell that it was a first lien and that there was no defense or set off against it. Roberts, the second mortgagee foreclosed on his mortgage and became the purchaser of the real estate at the sheriff's sale. Mitchell then issued a scire facias on the first mortgage, and Roberts presented his petition setting forth the above facts and alleging that Coombs, the mortgagor, had paid the mortgage, and asked leave to be made a defendant to the scire facias, which was granted. Practically the same grounds of defense relied on by the appellees in this court were presented on the trial (see pp. 431-433) and in the Supreme Court (p. 433) without avail; the lower court instructing the jury that if they were reasonably satisfied, from the evidence, that Coombs paid the mortgage in full to the mortgagee prior to the assignment to the plaintiff their verdict must be in favor of the defendant, Roberts, terre tenant. The jury found for the plaintiff against Coombs in the sum of $1,347, but judgment not to be

a lien on the land described in the mortgage. The Supreme Court, in affirming, said: "The mortgage in suit was executed by Nelson Coombs, June 30, 1869, to F. Ames, president, in trust for the Titusville Savings Bank, and was intended to secure, not future advancements, but a bond of $1,000, which Coombs at that time owed the bank. Shortly after this bond became due, it was, as the jury have found, fully paid. The bank, however, instead of satisfying the mortgage, retained it as security for future discounts.

As to Coombs, his acquiescence in this arrangement would, no doubt, estop him from setting up the payment of the bond to defeat the mortgage, but as to his judgment creditors, the transaction was of no legal force. As to them the mortgage was satisfied, and no arrangement, not apparent on its face, would avail to continue its lien ...... What then had the Titusville Savings Bank, on the 10th of February, 1871, to assign to the Producers' and Manufacturers' Bank, but a satisfied mortgage, good neither as a security nor as a conveyance? And let us suppose that this assignment, made, as it was, with Coombs' consent, not only estopped him, but, as to creditors, amounted to a novation of the mortgage, yet, as to them, it could be nothing more than a novation, and, in order to give it effect, they must have notice. But, before this assignment was executed, the Guthrie judgments were upon the dockets, and before it was recorded, the Roberts mortgage was entered. It thus follows, that the mortgage in suit cannot, under any view of the facts, occupy the status of a first lien, and it also follows that the purchasers at the sheriff's sale took the property unencumbered by any such lien."

It will be noted that, in that case, just as in this, the mortgagor gave the assignee a declaration of no set off; but this fact, while it estopped the mortgagor from defending against the mortgage in the hands of the assignee, could not be used to prejudice a subse-

quent lien creditor, not privy to it. So also, in that case, just as in this, the second mortgagee foreclosed his mortgage and purchased the real estate at sheriff's sale, subject to the first mortgage; but this fact did not affect prejudicially his right as a subsequent lien creditor to demand that any and all payments made by the mortgagor out of his own funds on the first mortgage debt be credited on that mortgage. The principle enunciated in the long line of decisions of which Steele v. Walter, 204 Pa. 257, is the best known, that one who purchases land at a sheriff's sale subject to the lien of a mortgage, buys subject to the mortgage debt, and not simply subject to that portion of the debt which the mortgagor ought to pay in view of his relation with others, cannot be used to prevent a subsequent lien creditor who purchases at a sheriff's sale which discharges his lien, from asserting his right to question the amount actually due on the prior lien. He buys, not as a volunteer, but as an interested lien creditor and does not forfeit his right, as such lien creditor, to inquire into the amount actually due on the prior mortgage, subject to which the real estate was sold.

We are of opinion that the cases above cited rule the present one and require a decree reducing the principal debt of the first mortgage to $10,000.

The assignments of error are sustained. The decree is reversed and the record is remitted with directions to reinstate the bill and enter a decree in conformity with prayers (b) and (c) of the bill. The appellees to pay the costs.